**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| BLACK & DECKER INC. and<br>BLACK & DECKER (U.S.) INC., | )<br>)<br>) | Civil Action No. 06-CV-4440 |
| Plaintiffs, | )<br>) |  |
| v. | )<br>) | Honorable Blanche M. Manning |
| ROBERT BOSCH TOOL CORPORATION | )<br>) | Magistrate Judge Nolan |
| Defendant. | )<br>)<br>) |  |

**DEFENDANT'S AMENDED MEMORANDUM IN SUPPORT OF ITS
MOTION THAT RES JUDICATA BARS ALL CLAIMS RELATING
TO U.S. PATENT NOS. 6,308,059 AND 6,788,925,
OR IN THE ALTERNATIVE, FOR A STAY PENDING APPEAL**

Douglas G. Williams
Erik G. Swenson
MERCHANT & GOULD, P.C.
3200 IDS Center, 80 S. Eighth Street
Minneapolis, MN 55402
Tel: (612) 332-5300
Fax: (612) 332-9081

**Attorneys for Defendant
Robert Bosch Tool Corporation**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF UNDISPUTED FACTS ................................................................... 1

    A. Black & Decker Could Have Asserted Claims Against The PB-10CD Advanced During The First Lawsuit .................................................................. 1

    B. The First Lawsuit And The Second Lawsuit Are Substantially Related ................. 3

III. **THIS COURT SHOULD DISMISS BLACK & DECKER'S CAUSE OF ACTION FOR INFRINGEMENT OF THE PREVIOUSLY ASSERTED PATENTS** ......................................................................................................................... 4

    A. Legal Standards For A Motion To Dismiss .................................................. 4

    B. Res Judicata Bars Black & Decker's Cause Of Action For Infringement Of The Previously Asserted Patents ........................................................................ 4

        1. Black & Decker COULD Have Raised Its Claims Against The PB-10CD Advanced Radio In The First Lawsuit ............................................. 5

        2. Black & Decker SHOULD Have Raised Its Claims Against The PB-10CD Advanced Radio In The First Lawsuit ........................................ 9

        3. The Accused Products Do Not Need To Be Identical For Res Judicata To Apply ..................................................................................... 10

IV. **ALTERNATIVELY, THIS COURT SHOULD STAY THIS LAWSUIT PENDING THE OUTCOME OF THE APPEAL IN THE FIRST LAWSUIT** ......... 12

V. **CONCLUSION** ........................................................................................................... 15

**TABLE OF AUTHORITIES**

**Cases**

*Acumed LLC v. Stryker Corp.*, 2006 U.S. Dist. LEXIS 81932 (D. Or. 2006) ............... iv, 5, 8, 11

*Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155 (7th Cir.), *cert. denied*,
   515 U.S. 1103 (1995) ............................................................................................................ 9

*Am. Tel. & Tel. Co. v. Milgo Elec. Corp.*, 416 F. Supp. 951 (S.D.N.Y. 1976) .......... 13

*AMEX v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002) .................................................. 9

*Bayer v. Novartis Crop Prot. Inc.*, 2000 U.S. Dist. LEXIS 18395,
   55 U.S.P.Q.2D (BNA) 1509 (M.D. La. 2000) .................................................................. 13

*Booker v. Ward*, 888 F. Supp. 869 (N.D. Ill. 1995) ........................................................ 4

*Brown v. Felsen*, 442 U.S. 127 (1979) *superseded by statute on other grounds* ........... 12

*Brzostowski v. Laidlaw Waste Sys.*, 49 F.3d 337 (7th Cir. 1995) ............................. 5, 9

*Childers Foods, Inc. v. Rockingham Poultry Marketing Co-op, Inc.*, 203 F. Supp. 794
   (W.D. Va. 1962) .................................................................................................................. 13

*Civix-DDI, LLC v. Expedia, Inc.*, 2005 U.S. Dist. LEXIS 9493 (N.D. Ill. 2005) ........ 9

*Crosby v. Bowater, Inc.*, 2006 U.S. Dist. LEXIS 67144 (N.D. Ill. 2006) .................... 4

*Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) ...................................... 14

*East Chicago Mach. Tool Corp. v. Stone Container Corp.*, 1974 U.S. Dist. LEXIS 9302,
   181 U.S.P.Q. 744 (N.D. Ill. 1974) .................................................................................. 14

*Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir. 1996) ........................................................ 4

*GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997) ............ 4

*Landfair v. J.B. Hunt Transp.*, 2006 U.S. Dist. LEXIS 87809 (N.D. Ill. 2006) .......... 4

*Landis v. N. Am. Corp.*, 299 U.S. 248 (1936) ............................................................... 12

*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616 (Fed. Cir. 1995) ............ 5

*N. Trust Co. v. Peters*, 69 F.3d 123 (7th Cir. 1995) ...................................................... 4

*Polymer Indus. Prods. Co. v. Bridgestone/Firestone*, 211 F.R.D. 312 (N.D. Ohio 2002) ........... 9

*Ward v. Jessie Brown VAH*, 2005 U.S. Dist. LEXIS 32714 (N.D. Ill. 2005) .............. 5

*Wireless Spectrum Techs., Inc. v. Motorola Corp.*, 2001 U.S. Dist. LEXIS 239
   (N.D. Ill. 2001) .................................................................................................................. 12

*Yoon Ja Kim v. Sara Lee Bakery Group, Inc.*, 412 F. Supp. 2d 929 (N.D. Ill. 2006) .................. 9

### Other Authorities

Wallace, Gregory J., *Note: Toward Certainty And Uniformity In Patent Infringement Cases After Festo And Markman: A Proposal For A Specialized Patent Trial Court With A Rule Of Greater Deference*, 77 S. CAL. L. REV. 1383 (2004) .............................................................................................. 15

# EXHIBIT LIST

**EXHIBIT 1**  Complaint for Patent Infringement, Civil Action No. 04-C-7955 (Docket No. 1)

**EXHIBIT 2**  Black & Decker's Opposition to Defendant's Motion in Limine To Preclude Black & Decker from Raising New Accused Products At Trial ("New Accused Product Opposition") at 1, Civil Action No. 04-C-7955 (Docket No. 340)

**EXHIBIT 3**  Exhibit D to Black & Decker's Opposition to Defendant's Motion in Limine To Preclude Black & Decker from Raising New Accused Products At Trial, Civil Action No. 04-C-7955 (Docket No. 340).

**EXHIBIT 4**  Memorandum Opinion and Order, Civil Action No. 04-C-7955 (Docket No. 578)

**EXHIBIT 5**  Minute Order dated August 23, 2006, Civil Action No. 04-C-7955 (Docket No. 375)

**EXHIBIT 6**  Motion for Reassignment Pursuant to Local Rule 40.4, Civil Action No. 04-C-7955 (Docket No. 565)

**EXHIBIT 7**  Judgment, Civil Action No. 04-C-7955 (Docket No. 486)

**EXHIBIT 8**  Defendant Robert Bosch Tool Corp.'s Motion in Limine to Preclude Black & Decker from Raising New Accused Products at Trial ("Bosch's Motion in Limine") at 2, Civil Action No. 04-C-7955 (Docket No. 311)

**EXHIBIT 9**  September 22, 2005 Deposition of Steve Cole at 69:9-17 (Exhibit B to Bosch's Motion in Limine, Civil Action No. 04-C-7955 (Docket No. 311))

**EXHIBIT 10**  September 21, 2005 Rule 30(b)(6) Deposition of Bosch (Steve Cole) at 8:5-17; 156:13-164:20 (Exhibit C to Bosch's Motion in Limine, Civil Action No. 04-C-7955 (Docket No. 311))

**EXHIBIT 11**  September 20, 2005 Deposition of John DeCicco at 133:16-137:5 (Exhibit D to Bosch's Motion in Limine, Civil Action No. 04-C-7955 (Docket No. 311))

**EXHIBIT 12**  Trial Transcript at 677:3-21, Civil Action No. 04-C-7955

**EXHIBIT 13**  PTX-198, Civil Action No. 04-C-7955

**EXHIBIT 14**  *Acumed LLC v. Stryker Corp.*, 2006 U.S. Dist. LEXIS 81932, **1-6 (D. Or. 2006)

**EXHIBIT 15**  Minute Entry dated October 24, 2005, Civil Action No. 04-C-7955 (Docket No. 123)

I.  **INTRODUCTION**

Robert Bosch Tool Corporation ("Bosch") moves for judgment on the pleadings that Plaintiffs' (collectively "Black & Decker") cause of action for infringement of U.S. Patent Nos. 6,308,059 and 6,788,925 ("Previously Asserted Patents") is barred by res judicata (claim preclusion). This cause of action involves the same patents, the same parties, and the same products, namely Bosch's Power Box™ jobsite radios, at issue in a lawsuit Black & Decker filed against Bosch in 2004 ("First Lawsuit"). Judge St. Eve barred Black & Decker from asserting infringement against the current version of the Power Box™ ("PB-10CD Advanced") in the First Lawsuit because Black & Decker failed to adequately disclose infringement contentions against this product. Now, Black & Decker wants a second bite at the apple and has filed this lawsuit asserting a cause of action it could have and should have raised in the First Lawsuit. Such duplicative litigation is barred by the doctrine of res judicata and should be dismissed with prejudice.

Alternatively, if the Court denies Bosch's motion to dismiss the Previously Asserted Patents from this suit, Bosch moves to stay this suit pending appeal of the First Lawsuit. In the First Lawsuit, the jury rendered a verdict that some of the asserted claims were valid and infringed and that other claims were invalid and not infringed. Post-trial motions relating to the jury verdict are pending. Depending on the post-trial rulings, the parties will likely appeal one or more aspects of the jury verdict. Bosch has already appealed the decision that the Previously Asserted Patents are unenforceable due to Black & Decker's inequitable conduct. The Federal Circuit has a high reversal rate, particularly for claim construction issues, and thus its decision in the First Lawsuit will likely impact issues in this lawsuit. For example, the Federal Circuit may construe the claims of the Previously Asserted Patents differently than this Court or may determine the Previously Asserted Patents are invalid or unenforceable. As such, a stay of this litigation is necessary to avoid duplicative litigation, inconsistent results, and an inefficient administration of justice.

II.  **STATEMENT OF UNDISPUTED FACTS**

    A.  **Black & Decker Could Have Asserted Claims Against The PB-10CD Advanced During The First Lawsuit**

        1.  In December 2004, Black & Decker sued Bosch ("First Lawsuit") asserting that its "manufacture, use, importation, sale, and/or offer for sale of the **Bosch 'Power Box' jobsite radio**" infringed U.S. Patent Nos. 6,308,059 and 6,788,925 ("Previously Asserted Patents"). *See*

Complaint for Patent Infringement, Civil Action No. 04-C-7955 (Docket No. 1) (Ex. 1) (emphasis added).

2. There are three different models of the Bosch Power Box™ radio: PB-10, PB-10CD, and PB-10CD Advanced. *See* Amended Complaint for Patent Infringement at ¶ 8 (Docket No. 12).

3. Bosch began the work on the PB-10CD Advanced project in January 2005. *See* Black & Decker's Opposition to Defendant's Motion in Limine To Preclude Black & Decker from Raising New Accused Products At Trial ("New Accused Product Opposition") at 1, Civil Action No. 04-C-7955 (Docket No. 340) (Ex. 2).

4. Bosch witnesses testified about the PB-10CD Advanced during fact discovery in the First Lawsuit. *See* New Accused Product Opposition at 1, (citing deposition of John DeCicco) (Ex. 2); *see also* Defendant Robert Bosch Tool Corp.'s Motion in Limine to Preclude Black & Decker from Raising New Accused Products at Trial ("Bosch's Motion in Limine") at 2, Civil Action No. 04-C-7955 (Docket No. 311) (Ex. 8); September 22, 2005 Deposition of Steve Cole at 69:9-17 (Ex. B to Bosch's Motion in Limine) (Ex. 9); September 21, 2005 Rule 30(b)(6) Deposition of Bosch (Steve Cole) at 8:5-17; 156:13-164:20 (Ex. C to Bosch's Motion in Limine) (Ex. 10); September 20, 2005 Deposition of John DeCicco at 133:16-137:5 (Ex. D to Bosch's Motion in Limine) (Ex. 11).

5. Bosch started selling the PB-10CD Advanced in October 2005. *See* Amended Complaint at ¶ 11.

6. Black & Decker's technical expert witness, Dr. Andrew Neuhalfen, "reviewed and examined" the PB-10CD Advanced as part of his expert report on non-infringement in the First Lawsuit. *See* New Accused Product Opposition at 3 (Ex. 2) (citing December 2, 2005 Expert Report of Andrew Neuhalfen at 9, 19).

7. Black & Decker's expert report in the First Lawsuit contained photographs of the PB-10CD Advanced. *See* Exhibit D to the New Accused Product Opposition (Ex. 3).

8. At trial in the First Lawsuit, Black & Decker's expert played a video at trial demonstrating how he inserted a smoke candle into the PB-10CD Advanced Power Box™ to prove that the old PB-10 and PB-10CD Power Box™ radios infringed certain claims of the Previously Asserted Patents. *See* Trial Transcript at 677:3-21 (discussing PTX 198) (Ex. 12); PTX 198 (Ex. 13). The PB-10CD Advanced can be distinguished from the PB-10CD because it has a remote control in the handle and the PB-10CD does not.

9.     Throughout the First Lawsuit Black & Decker treated all versions of the Power Box™ as the same product – Black & Decker sought to obtain damages in the First Lawsuit for all three versions of the Power Box™.  *See* New Accused Product Opposition at 2 (Ex. 2).

10.     However, "there is evidence in the record indicating that the PB-10CD Advanced has different features from the old Power Box™ radios, including a new tuner/amplification circuit board, and thus infringement by the new Power Box radio would not [be] 'clear on the face of the matter."  *See* Memorandum Opinion and Order, Civil Action No. 04-C-7955 (Docket No. 578) (Ex. 4).

11.     On August 17, 2006, Black & Decker filed this lawsuit asserting that the Power Box™ radios infringed U.S. Patent No. 7,043,283 (the "New Patent").

12.     On August 23, 2006, Judge St. Eve precluded Black & Decker from seeking damages for the PB-10CD Advanced in the First Lawsuit because it did not adequately disclose its contentions as to why the PB-10CD Advanced infringed the Previously Asserted Patents.  *See* Minute Order dated August 23, 2006, Civil Action No. 04-C-7955 (Docket No. 375) (Ex. 5).

13.     On August 28, 2006, Black & Decker amended its complaint in this case to assert claims that Bosch's Power Box™ PB-10CD Advanced infringed the Previously Asserted Patents.

### B.     The First Lawsuit And The Second Lawsuit Are Substantially Related

14.     Despite the differences in the electronics between the PB-10CD and PB-10CD Advanced, Black & Decker has repeatedly acknowledged that this lawsuit is "related to [the First Lawsuit] . . . because related patents and the same and similar products at issue in [the First Lawsuit] are at issue in this case."  *See* Amended Complaint at ¶ 14.

15.     Black & Decker moved to have this lawsuit reassigned to Judge St. Eve, arguing:

> 1.     Both cases involve the same property, i.e., plaintiff's patents-in-suit [Litigated '059 and '925 Patents];
> 2.     Both cases involve the same accused product, i.e., defendant's Power Box;
> 3.     Both case involve the same issues of fact, as Bosch sells the Power Box products accused in the present case, as well as the so-called 'new' Power Box which is also alleged to infringe the same patents;
> 4.     Both cases involve the same issues of law; in both cases Bosch has made essentially identical allegations of non-infringement and invalidity of the patents in suit and inequitable conduct as well as the resurrection of claims and allegations already stricken from this case . . . .

*See* Motion for Reassignment Pursuant to Local Rule 40.4, Civil Action No. 04-C-7955 (Docket

3

No. 565) (Ex. 6).

### III. THIS COURT SHOULD DISMISS BLACK & DECKER'S CAUSE OF ACTION FOR INFRINGEMENT OF THE PREVIOUSLY ASSERTED PATENTS

This Court should dismiss Black & Decker's claims that the Power Box™ PB-10CD Advanced infringes the Previously Asserted Patents because Black & Decker could have and should have brought this claim in the First Lawsuit.[1]

#### A. Legal Standards For A Motion To Dismiss

A motion for judgment on the pleadings is considered under the same standard as a Rule 12(b)(6) motion to dismiss. *See Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir. 1996). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) takes "all well pleaded facts alleged . . . as true," and the Court may "draw all reasonable inferences in favor of the nonmoving party." *N. Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). Courts should not grant a Rule 12(b)(6) motion unless "it appears beyond doubt that the plaintiff cannot prove any facts that would support [its] claim for relief." *Frey*, 91 F.3d at 46.

In ruling on a motion to dismiss, a court may take judicial notice of pleadings, orders, and public court documents filed in previous cases. *See GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-82 (7th Cir. 1997) (collecting cases); *Landfair v. J.B. Hunt Transp.*, 2006 U.S. Dist. LEXIS 87809 (N.D. Ill. 2006) ("Public court documents are among the 'matters of public record' which we are allowed to consider in deciding Defendant's motion to dismiss."); *Booker v. Ward*, 888 F. Supp. 869, 871 (N.D. Ill. 1995) (taking judicial notice of Plaintiff's related state court proceedings in ruling on motion to dismiss); *Crosby v. Bowater, Inc.*, 2006 U.S. Dist. LEXIS 67144, *6 (N.D. Ill. 2006) ("A district court may consider matters of public record without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.").

#### B. Res Judicata Bars Black & Decker's Cause Of Action For Infringement Of The Previously Asserted Patents

"Case law instructs that 'when a defendant raises *res judicata* as a defense and it is clear from the complaint's face, and matters of which the district court may take judicial notice that the

---

[1] This lawsuit also involves a cause of action for infringement of U.S. Patent No. 7,043,283. This patent did not issue until May 9, 2006, well after the summary judgment and expert discovery deadlines in the First Lawsuit. Thus, Black & Decker could not have raised this cause of action in the First Lawsuit and it should not be barred by res judicata.

4

plaintiff's claims are barred as a matter of law, dismissal under Rule 12(b)(6) is proper.'" *Ward v. Jessie Brown VAH*, 2005 U.S. Dist. LEXIS 32714, **28-29 (N.D. Ill. 2005). Although this is a patent case, the law of the Seventh Circuit applies to questions of claim preclusion or res judicata. *See Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 618 (Fed. Cir. 1995).

### 1. Black & Decker COULD Have Raised Its Claims Against The PB-10CD Advanced Radio In The First Lawsuit

Res judicata bars not only those causes of action which were actually decided in a prior suit, but also all causes of action which could have been raised in that action. *Brzostowski v. Laidlaw Waste Sys.*, 49 F.3d 337, 338-39 (7th Cir. 1995). Application of res judicata requires three elements: (1) a judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action between both suits. *See id.* After considering statements made by Black & Decker in documents filed in this lawsuit and the First Lawsuit, as well as Judge St. Eve's orders from the First Lawsuit, it is clear all of the elements of res judicata are met in this case with respect to Black & Decker's claim for infringement of the Previously Asserted Patents.

The District of Oregon recently considered an almost identical fact pattern and found that res judicata barred a patent infringement claim against a new version of an accused product that could have been litigated during a First Lawsuit between the same parties relating to an older version of the same product. *Acumed LLC v. Stryker Corp.*, 2006 U.S. Dist. LEXIS 81932, **1-6 (D. Or. 2006) (Ex. 14). In April 2004 plaintiff Acumed brought suit alleging defendant's proximal humeral nail ("T2") for fixing bone fractures infringed its '444 patent. In April 2005, defendant began marketing a longer version of the T2 nail ("T2 Long"). In August 2005 after discovery had closed and less than a month before trial, plaintiff filed a motion to compel defendant to produce a physical sample of the T2 Long nail. Defendant produced a sample and plaintiff argued it was substantially similar to the T2 nail and also infringed the '444 patent. As opposed to precluding plaintiff from raising the new version at trial as a discovery sanction, the court told plaintiff it could litigate both versions but that this would delay the trial by a year. Plaintiff chose not to add the T2 Long nail to the suit and the parties proceeded to trial as scheduled. The jury found that the T2 nail infringed the '444 patent and that defendant's infringement was willful.

A month after the court entered a final judgment against defendant in the First Lawsuit, plaintiff brought a second lawsuit asserting that the T2 Long Nail infringed the '444 patent. The

5

court granted defendant's motion to dismiss the second lawsuit based on res judicata. In so doing, the court applied Ninth Circuit law because the issues were not unique to patent law. Like the Seventh Circuit, under Ninth Circuit law res judicata bars a claim whenever there is: (1) an identity of claims, (2) a final judgment on the merits, and (3) identity of parties or privity between parties. *See id.* at \*\*15-16. The Ninth Circuit applies a test to determine whether there is an identity of claims that is similar to the Seventh Circuit, namely whether "the two suits arise out of the same transactional nucleus of facts." *See id.* The *Acumed* court found res judicata barred the second lawsuit because:

> In *Acumed I*, Plaintiff acknowledged its potential T2 Long infringement claim and expressed its belief that the T2 Long was substantially similar to the T2 PHN with respect to potential infringement of the '444 Patent. **At the heart of Plaintiff's infringement claims in both *Acumed I* and *Acumed II* is Plaintiff's allegation that Defendant copied Plaintiff's Polaris nail. Both infringement claims, therefore, involve substantially the same alleged violation of the '444 Patent.** Thus, trial of Plaintiff's potential T2 Long infringement claim would require substantially the same evidence that was presented in *Acumed I*. As noted, Plaintiff even offered documents pertaining to the T2 Long in the *Acumed I* trial for the purpose of showing that Defendants willfully infringed the '444 Patent by manufacturing and selling the T2 PHN. **Although the T2 PHN and T2 Long may not be identical devices and a trial as to the alleged T2 Long patent infringement may involve additional evidence not presented in *Acumed I*, application of *res judicata* only requires that substantially the same evidence be necessary in both actions.**
>
> Here Plaintiff's T2 PHN and T2 Long infringement claims arise from the same transactional nucleus of facts and, therefore, could have been tried together in *Acumed I* using substantially the same evidence if Plaintiff had chosen to do so. Thus, the Court concludes *Acumed I* and *Acumed II* share an identity of claims, and, accordingly, *res judicata* applies.

*Id.* at \*\*17-18 (emphasis added) (internal citations omitted).

Just like the plaintiff in *Acumed*, at the heart of Black & Decker's claims in both lawsuits is Black & Decker's allegation that Bosch copied its DeWalt radio charger. Further, just like *Acumed*, Black & Decker could have brought its claim that the Power Box™ PB-10CD Advanced infringed the '059 and '925 patents in the First Lawsuit. Indeed, Black & Decker fully intended to pursue this claim in the First Lawsuit until it was precluded from doing so as a sanction for discovery non-disclosures. *See* New Accused Product Opposition at 2 (Ex. 2); Minute Order (Ex. 5). In various court filings before Judge St. Eve as detailed in the statement of undisputed facts above, Black & Decker has made the following admissions, among others:

6

  (1)  The Power Box™ PB-10CD Advanced project started in January 2005, a month after Black & Decker filed the First Lawsuit.

  (2)  Black & Decker knew about the PB-10CD Advanced during fact discovery in the First Lawsuit.

  (3)  Bosch witnesses testified about the PB-10CD Advanced during fact discovery and specifically about the differences between the PB-10CD Advanced and the PB-10CD.

  (4)  Black & Decker's technical expert had possession of the PB-10CD Advanced prior to drafting his expert report on infringement in the First Lawsuit.

  (5)  Black & Decker's technical expert "reviewed and examined" the PB-10CD Advanced as part of his expert report.

  (6)  There were photographs of the PB-10CD Advanced in Black & Decker's expert report.

  (7)  Black & Decker's technical expert played a video of the PB-10CD Advanced at trial in the First Lawsuit attempting to show that the old Power Box™ radios infringed the Previously Asserted Patents.

  (8)  Black & Decker sought damages for the sale of the PB-10CD Advanced in the First Lawsuit.

*See* Black & Decker's New Accused Product Opposition at 1-3, Civil Action No. 04-C-7955 (Docket No. 340) (Ex. 2); *see also* Trial Transcript at 677:3-21 (Ex. 12); PTX-198 (Ex. 13).

  Although Black & Decker may argue that it could not have included the PB-10CD Advanced in the First Lawsuit because Bosch did not sell it until after fact discovery closed, this argument fails for a number of reasons. First, it is not entirely true – fact discovery was extended in part until November 22, 2005. *See* Minute Entry dated October 24, 2005, Civil Action No. 04-C-7955 (Docket No. 123) (Ex. 15). Bosch started selling the PB-10CD Advanced in October 2005. Second, acts other than actual sales may trigger liability for patent infringement. *See* 35 U.S.C. § 271 (patent infringement includes unauthorized manufacture, use, offer for sale, sale, and importation of a patented invention). In fact, Bosch imported and offered for sale the PB-10CD Advanced before October 2005 (and thus during fact discovery). Indeed, common sense dictates that it would have had to undertaken these steps during fact discovery to begin full blown sales of this product in October 2005. All of this information was available to Black & Decker during fact discovery in the First Lawsuit. Third, as mentioned above, Black & Decker deposed Bosch witnesses about the PB-10CD Advanced during fact discovery. These witnesses told Black & Decker under oath that the PB-10CD Advanced (also called PB-11) had different features including a new antenna, a remote control, and a new tuner/amplification circuit board. *See* Cole 30(b)(6)

Dep. at 164:7-20 (Ex. 10). Fourth, Bosch was selling the PB-10CD Advanced several months before Black & Decker's expert report was due and before expert discovery closed. To conduct his infringement analysis, Black & Decker's expert dismantled the PB-10CD radio and analyzed and tested the circuit boards. Although he also had possession of several PB-10CD Advanced radios (as demonstrated by photographs of this radio in his expert report), he declined to dismantle the new Power Box™ or to analyze or test its circuit boards, even though Black & Decker knew these circuit boards were different. Black & Decker's expert had what he needed to render an infringement opinion in the First Lawsuit, but for inexplicable reasons he chose not to do so. As such, Black & Decker cannot dispute that it **could have** raised its claim against the Power Box™ PB-10CD Advanced in the First Lawsuit.

> Moreover, the *Acumed* court rejected this same argument stating:
>
> The timing of the potential infringement by the T2 Long does not alter the Court's conclusion [that res judicata applies] even though Plaintiff filed its Complaint in *Acumed I* on April 14, 2004, and Defendants did not begin marketing or selling the T2 Long in the United States until April 2005. 35 U.S.C. § 271, the statute governing patent infringement, would not have applied to the T2 Long before April 2005 because patent infringement liability only attaches when a party, without authority, makes, uses, or sells a patented invention. As noted, however, Plaintiff knew Defendants were marketing and selling the T2 Long in the United States well before the final adjudication of *Acumed I*, and the Court gave Plaintiff the opportunity to litigate the potential infringement of the T2 Long in *Acumed I*. Even if the Court had not provided Plaintiff with such an opportunity, Plaintiff could have made a motion to the Court for leave to file a supplemental pleading under Federal Rule of Civil Procedure 15(d) for the purpose of alleging transactions, occurrences, or events pertaining to the T2 Long that took place after the date of Plaintiff's original Complaint.

*Acumed*, 2006 U.S. Dist. LEXIS 81932 at **18-19. Like Acumed, Black & Decker had an opportunity to litigate its claims against the PB-10CD Advanced during the First Lawsuit. It knew about the PB-10CD Advanced, it knew that this product had different electronics from the earlier version, and its expert had possession of the PB-10CD Advanced prior to issuing his expert report. It could have adequately disclosed its infringement contentions against this product in the First Lawsuit.

Black & Decker may also argue that it did not have an "opportunity to litigate" because Bosch filed a motion in limine to preclude this claim from trial. However, this Court has rejected the same argument in a case where the second action asserted the identical patent against products that were at issue in a first action but which were precluded by the Court for failure to disclose

8

them as accused products in interrogatory responses. *Yoon Ja Kim v. Sara Lee Bakery Group, Inc.*, 412 F. Supp. 2d 929, 944 (N.D. Ill. 2006); *see also Civix-DDI, LLC v. Expedia, Inc.*, 2005 U.S. Dist. LEXIS 9493, *4 (N.D. Ill. 2005) (finding that plaintiff's second action was impermissible claim splitting, where the plaintiff sought "to assert in the Second Action the identical patents against the identical accused technology as in the Initial Action."); *AMEX v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002) (" [A] plaintiff is precluded from raising a particular legal theory in a subsequent action even if she were not permitted to assert that particular theory in the first action due to her own dilatory conduct.") (citation omitted). Had Black & Decker adequately and timely disclosed its contentions and expert's opinions, the PB-10CD Advanced would have been part of the First Lawsuit and this would be a dead issue. However, due to its own dilatory conduct Black & Decker did not disclose its contentions. Finding that Bosch should not be expected to defend itself against the unknown at trial, Judge St. Eve precluded Black & Decker's claims against the PB-10CD Advanced. Now Black & Decker wants to force Bosch and this Court to redo all of the work that was done or should have been done in the First Lawsuit. This is precise type of duplicative litigation that res judicata was designed to prohibit.

  **2. Black & Decker SHOULD Have Raised Its Claims Against The PB-10CD Advanced Radio In The First Lawsuit**

Likewise, Black & Decker should have raised its claim against the Power Box™ PB-10CD Advanced in the First Lawsuit. With regard to the first element of res judicata, Judge St. Eve entered judgment on September 22, 2006 in the First Lawsuit. *See* Judgment, Civil Action No. 04-C-7955 (Docket No. 486) (Ex. 7). This judgment has preclusive effect even though it will likely be appealed by both parties. *See Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155, 158-160 (7th Cir. 1995), *cert. denied,* 515 U.S. 1103 (1995).

As to the second element of res judicata, the parties in this First Lawsuit and this lawsuit are identical. *Compare* Amended Complaint (Docket No. 12) *with* Complaint, First Lawsuit (Ex. 1).

As to the third element of res judicata, two claims have "identity" if they are based on the same, or nearly the same, factual allegations. *Brzostowski*, 49 F.3d at 338-39; s*ee Polymer Indus. Prods. Co. v. Bridgestone/Firestone*, 211 F.R.D. 312, 318-19 (N.D. Ohio 2002). In *Polymer Industries*, the court granted a motion to dismiss based on similar facts to this case. There, the patentee brought suit for infringement of a bladder used to make tires called "Skim 1." Two years after the lawsuit was filed, the patentee learned that defendant was making a second type of

9

bladder, called "Skim 2." The defendant amended its answer to include a counterclaim for non-infringement of the Skim 2 bladder, but the patentee did not amend the complaint to seek damages for this new product. The jury found both products infringed and awarded damages for the Skim 1 product. The patentee brought a second suit seeking damages for the Skim 2 product. The court dismissed the second lawsuit under Rule 12(b)(6), stating:

> Applying this test, the Court finds that Polymer's claim for Skim-2 damages is barred. . . . Because Skim-2 infringement was raised in the prior action, Polymer's claim of Skim-2 damages should have also been raised in the prior action. . . .
>
> Indeed, the way that the Court has applied *res judicata* in this case is necessary to avoid the inconsistent result Polymer seeks. To explain, Polymer would have the Court preclude Bridgestone from contesting Skim-2 liability, but does not want the Court to preclude it from pursuing Skim-2 damages. In other words, on the one hand, Polymer *does not want* the Court to apply *res judicata,* i.e., the prior litigation does not preclude Polymer from pursuing Skim-2 damages in this case. On the other hand, however, Polymer *wants* the Court to apply *res judicata,* i.e., the adjudication of the prior litigation on the issue of Skim-2 liability precludes Bridgestone from contesting that liability in this case. Polymer cannot have it both ways. Rather, a uniform application of *res judicata* bars Polymer from pursuing its claim in this case.

*Id.* (citations omitted) (emphasis in original).

Likewise in this case, **using Black & Decker's own words**, its patent infringement claims for the '059 and '925 patents in the two lawsuits have identity because:

1. **Both cases involve the same property**, i.e., plaintiff's patents-in-suit [Litigated '059 and '925 Patents];
2. **Both cases involve the same accused product, i.e., defendant's Power Box;**
3. Both cases involve the same issues of fact, as Bosch sells the Power Box products accused in the present case, as well as the so-called 'new' Power Box which is also alleged to infringe the same patents;
4. Both cases involve the same issues of law; in both cases Bosch has made essentially identical allegations of non-infringement and invalidity of the patents in suit and inequitable conduct as well as the resurrection of claims and allegations already stricken from this case . . . .

*See* Black & Decker's Motion for Reassignment Pursuant to Local Rule 40.4, Civil Action No. 04-C-7955 (Docket No. 565) (Ex. 6). These admissions warrant dismissal for the claim that the Power Box™ PB-10CD Advanced infringes the '059 and '925 patents.

### 3. The Accused Products Do Not Need To Be Identical For Res Judicata To

**Apply**

Although some of the circuitry is different in the PB-10CD Advanced from the other versions of the Power Box™, Bosch does not need to prove the products are identical for res judicata to apply.  In *Acumed*, the court found defendant did NOT need "to establish that the T2 PHN and the T2 Long are essentially the same in order to raise a *res judicata* defense. Defendants only need to show that the T2 Long infringement claim could have been raised in the prior action." *Acumed*, 2006 U.S. Dist. LEXIS 81932 at *13.  As discussed above, there can be no question that Black & Decker could have raised its claim against the PB-10CD Advanced in the First Lawsuit.

Nevertheless, the old Power Box™ and PB-10CD Advanced products as a whole are similar as shown by an exhibit filed by Black & Decker before Judge St. Eve, which are photographs from Black & Decker's expert report in the First Lawsuit:



Indeed, they are both Power Box™ radios that look the same and have similar features.  The fact

11

that the differences in circuitry required Black & Decker to separately disclose its infringement contentions does not mean that Black & Decker did not need to raise both claims in the First Lawsuit. The fact that Black & Decker failed to comply with its discovery obligations does not warrant departure from policies underlying the doctrine of res judicata, namely judicial economy and protection of defendants against the harassment of repetitive and duplicative lawsuits. *See Brown v. Felsen*, 442 U.S. 127, 131 (1979), *superseded by statute on other grounds*. Allowing Black & Decker to assert infringement claims for the same patents litigated in the First Lawsuit against the Power Box™ PB-10CD Advanced radio will involve substantial duplication over what was done in the First Lawsuit and will be a significant waste of judicial resources.

Bosch should not be made to suffer for Black & Decker's mistakes. Bosch did what it was supposed to do. It told Black & Decker about the PB-10CD Advanced and its different circuit boards during the First Lawsuit. When Black & Decker did not disclose it claims against this new product, Judge St. Eve precluded these claims finding that Bosch should not be forced to defend against the unknown. Black & Decker's inability to assert these claims against Bosch was caused by Black & Decker, and Black & Decker alone.

As such, res judicata bars Black & Decker's claims that the Power Box™ PB-10CD Advanced infringes the previously asserted '059 and '925 patents.

## IV. ALTERNATIVELY, THIS COURT SHOULD STAY THIS LAWSUIT PENDING THE OUTCOME OF THE APPEAL IN THE FIRST LAWSUIT

If this Court declines to dismiss Black & Decker's claims that the PB-10CD Advanced infringes the Previously Asserted Patents, it should stay this suit pending the appeal from the First Lawsuit relating to the infringement, validity and enforceability of these same patents.

This Court has the power to grant a stay of litigation, within its sound discretion, based on its inherent power to control its docket. *Landis v. N. Am. Corp.*, 299 U.S. 248, 254, (1936); *Wireless Spectrum Techs., Inc. v. Motorola Corp.*, 2001 U.S. Dist. LEXIS 239, *2 (N.D. Ill. 2001). In deciding whether to grant a stay, courts should consider the "possible damage, hardship and inequities to the parties to the lawsuit and the relationship of the stay to the fulfillment of judicial objectives of simplification of the issues in question and trial of the case." *Wireless*, 2001 U.S. Dist. LEXIS 239 at **2-3. In *Wireless*, this Court granted a motion to stay a patent lawsuit while an interference proceeding involving the same patent was pending at the Patent and Trademark Office, stating:

> The Court finds that the equities favor a stay. The Court agrees with Motorola that a stay will further the interests of judicial economy and the conservation of the parties' resources. The Interference involves the validity of the '453 Patent, the same issue currently before this Court. If the PTO with its unique expertise determines that all or some of the '453 Patent's claims are invalid, that determination will either dispose of this case entirely or at least aid the Court in adjudicating this case. *See American Telephone & Telegraph Co. v. Milgo Electronic Corp.*, 416 F. Supp. 951, 953 (S.D.N.Y. 1976) (staying infringement action because the PTO's adjudication of the priority issue "can only aid the court in its determination of this lawsuit"); *Childers Foods, Inc. v. Rockingham Poultry Marketing Co-op, Inc.*, 203 F. Supp. 794, 797 (W.D. Va. 1962) (staying infringement pending interference because PTO's determination of priority of invention would be "most helpful" to court); *Bayer v. Novartis Crop Protection Inc.*, 2000 U.S. Dist. LEXIS 18395, 55 U.S.P.Q.2D (BNA) 1509, 1511-12 (M.D. La. 2000) (staying infringement action pending interference because PTO's expertise would aid court in deciding case on the merits). Under these circumstances, there is no need for either party to spend time and money litigating both here and in front of the PTO at the same time. *See Childers*, 203 F. Supp. at 796 (noting that simultaneous proceedings in federal district court and the PTO are "wasteful and extravagant" where issues to be decided are very similar); *Bayer*, 55 U.S.P.Q.2D (BNA) at 1511-12 (holding that simultaneous litigation of patent issues "would create an economic hardship on the parties and also result in the ineffective administration of justice").

*See id.* at *6. This Court also based its decision to stay on the fact that discovery had not yet started and that money damages would adequately compensate the patentee should infringement of a valid patent claim ultimately be found. *See id.*

Likewise in this case, the Federal Circuit will be ruling on several issues with significant impact on issues involved in this lawsuit, namely infringement, enforceability and validity of the Previously Asserted Patents. Like the Patent Office, the Federal Circuit has expertise in patent law and the guidance it will provide justifies staying this litigation. Indeed, the Federal Circuit's decision will be binding on this Court and may dispose of many, if not all, of the causes of action facing this Court. For example, if the Federal Circuit invalidates the Previously Asserted Patent claims, this Court need not consider whether the PB-10CD Advanced Power Box™ infringes these patents. If the Federal Circuit finds Black & Decker committed inequitable conduct, potentially all of the claims in this lawsuit would be eliminated, including claims as to the New Patent.[2]

---

[2] If an original patent is found unenforceable for inequitable conduct, descendent patents which are genealogically related to the original patent, such as continuations, continuations-in-part, or divisionals, may also be rendered unenforceable. *See E. Chicago Mach. Tool Corp. v. Stone Container Corp.*, 1974 U.S. Dist. LEXIS 9302, *18 (N.D. Ill. 1974).

Moreover, the Federal Circuit has a high reversal rate, hovering around 40 percent for claim interpretation issues. *See, e.g., Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1476 (Fed. Cir. 1998) (Rader, J., dissenting).[3] It would be a waste of time and resources for this Court and the parties to proceed with this lawsuit relying on claim interpretations that may be changed by the Federal Circuit. Instead, it is more economical and prudent for this Court to stay this litigation, allow the Federal Circuit to sort out the issues on appeal, and then proceed with the issues that remain having the benefit of the Federal Circuit's opinion.

Although Black & Decker's cause of action for its other patent in suit, U.S. Patent No. 7,043,283, is not involved in the appeal, it should also be stayed because it is intimately related to the Previously Asserted Patents. First and foremost, the '283 patent is a continuation of the Previously Asserted Patents and contains the same specification and drawings. Because of this relationship, the file histories of the Previously Asserted Patents will be highly relevant to interpreting the claims of the New Patent. Second, Black & Decker is asserting the New Patent against the same products, namely all three versions of the Power Box™ radio. As such, ALL of the witnesses, both fact and expert, and ALL of the documents will be the same for Black & Decker's New Patent cause of action as for its causes of action for the Previously Asserted Patents. It would be wasteful and extravagant to separately litigate whether the Power Box™ radios infringe the New Patent and whether the Power Box™ PB-10CD Advanced infringes the Previously Asserted Patents.

Finally, staying this action will not unduly prejudice Black & Decker. Although it will delay Black & Decker's chance to request an injunction against Bosch's Power Box™ PB-10CD Advanced, Black & Decker had the opportunity to seek both a preliminary and permanent injunction in the First Lawsuit but waived the right to do so. Specifically, it chose not to

---

[3] "Judge Rader's empirical survey showing a high reversal rate of claim constructions has been corroborated by other independent studies. One study by Kimberly Moore found that district court judges improperly construe patent claim terms in 33% of the cases appealed to the Federal Circuit. Moore found that this 33% error rate for claim construction was higher than the 22% reversal rate the Federal Circuit had on all other patent issues from 1983 to 1999. Another study by Christian Chu analyzed nearly every patent case that was appealed to the Federal Circuit from January 1, 1998 until April 30, 2000. Chu's study concluded that although the "Federal Circuit reversed 29.6% of cases involving an express review of claim construction," it modified claim interpretations in 44% of these cases. Based on this empirical evidence, it appears that the Federal Circuit is affirming approximately 60% and reversing 40% of all claim constructions that are appealed." Wallace, Gregory J., *Note: Toward Certainty And Uniformity In Patent Infringement Cases After Festo And Markman: A Proposal For A Specialized Patent Trial Court With A Rule Of Greater Deference*, 77 S. CAL. L. REV. 1383, 1391 (2004).

adequately disclose its discovery contentions, which resulted in a preclusion of this product from the First Lawsuit. *See* New Accused Product Opposition at 2 (Ex. 2); Minute Order (Ex. 5). Any harm it may suffer is self-inflicted. Further, should Black & Decker ultimately prevail in its cause for infringement of the New Patent, it will be entitled to an award of damages for Bosch's Power Box™ sales during the stay of litigation. Because discovery has not yet started, a stay is particularly appropriate and will not operate as a tactical advantage or hardship for either party.

## V.     CONCLUSION

For all of the foregoing reasons, this Court should dismiss Black & Decker's claim that Bosch's Power Box™ PB-10CD Advanced infringes the '059 and '925 patents because it is barred res judicata as a matter of law. In the alternative, this lawsuit should be stayed pending the appeal of very similar issues from the First Lawsuit.

Respectfully submitted,

Dated:  March 1, 2007

*s/ Kirstin L. Stoll-DeBell*
Kirstin L. Stoll-DeBell (pro hac vice)
Elizabeth J. Reagan (pro hac vice)
MERCHANT & GOULD, P.C.
1050 Seventeenth Street, Suite 1950
Denver, Colorado 80265
Tel:  (303) 357-1670
Fax:  (303) 357-1671

Douglas G. Williams (pro hac vice)
Erik G. Swenson (pro hac vice)
MERCHANT & GOULD, P.C.
3200 IDS Center, 80 S. Eighth Street
Minneapolis, MN 55402
Tel:  (612) 332-5300
Fax:  (612) 332-9081

**Attorneys for Defendant Robert Bosch Tool Corp.**