IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BLACK & DECKER INC. and | ) | |
| BLACK & DECKER (U.S.) INC., | ) | Civil Action No. 06 CV 4440 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Hon. Blanche M. Manning |
| v. | ) | Mag. Judge Nolan |
| | ) | |
| ROBERT BOSCH TOOL CORPORATION, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

**BLACK & DECKER'S RESPONSE IN OPPOSITION
TO BOSCH'S MOTION THAT RES JUDICATA BARS ALL CLAIMS
RELATING TO U.S. PATENT NOS. 6,308,059 AND 6,788,925,
OR IN THE ALTERNATIVE, FOR A STAY PENDING APPEAL**

Raymond P. Niro
Dean D. Niro
Christopher J. Lee
Richard B. Megley, Jr.
Paul C. Gibbons
David J. Mahalek
NIRO, SCAVONE, HALLER & NIRO
181 West Madison, Suite 4600
Chicago, Illinois  60602-4515
(312) 236-0733

*Attorneys for Plaintiffs Black & Decker Inc. and
Black & Decker (U.S.) Inc.*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. FACTUAL DISPUTES PRECLUDE THE GRANT OF A DISMISSAL ..............................2

III. BOSCH FAILS TO PROVE ITS RES JUDICATA CLAIM .......................................7

    A. Bosch's Res Judicata Defense Is Barred By The Doctrine Of Judicial Estoppel .........7

        1. Before Judge St. Eve, Bosch Took The Inconsistent Position That Infringement Of The "New" Radio Charger Should Be Litigated In This Case ....................................................................................8

        2. Admittedly The Facts At Issue Are The Same In Both Cases .........................9

        3. Bosch Persuaded Judge St. Eve That Infringement Of The "New" Radio Charger Should Be Litigated In This Case.........................9

        4. Allowing Bosch To Successfully Argue Inconsistent Positions Would Provide Bosch An Unfair Advantage..................................................10

    B. The "Advanced" Product Did Not Come Out Until After The First Lawsuit Was Filed ......................................................................................11

    C. The "New" Radio Charger Was Never Litigated In The First Case............................12

IV. THE ACUMED V. STRYKER CASE IS INAPPOSITE................................................13

V. BOSCH'S ALTERNATE REQUEST FOR A STAY SHOULD ALSO BE DENIED.........................................................................................................................16

VI. CONCLUSION ............................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

### <u>FEDERAL CASES</u>

<u>AMEX</u> v. <u>Mopex, Inc.</u>,
215 F.R.D. 87 (S.D.N.Y. 2002) ................................................................................................16

<u>Acumed LLC</u> v. <u>Styker Corporation</u>,
2006 U.S. Dist. LEXIS 81932 (D. Or. 2006) ..................................................................... 13, 14

<u>In re Cassidy</u>,
892 F.2d 637 (7th Cir. 1990) .....................................................................................................8

<u>Chromalloy American Corp.</u> v. <u>Kenneth Gordon, Ltd.</u>,
736 F.2d 694 (Fed. Cir. 1984) .................................................................................................12

<u>Civix-DDI, LLC</u> v. <u>Expedia, Inc.</u>,
2005 U.S. Dist. LEXIS 9493 (N.D. Ill. 2005) ........................................................................16

<u>Davis</u> v. <u>Wakelee</u>,
156 U.S. 680 (1895) ...................................................................................................................7

<u>Doe</u> v. <u>Allied-Signal, Inc.</u>,
985 F.2d 908 (7th Cir. 1993) ...................................................................................................11

<u>Fresenius Medical Care Holdings, Inc.</u> v. <u>Baxter International, Inc.</u>,
2006 U.S. Dist. LEXIS 41749 (N.D. Cal. June 13, 2006) .......................................................13

<u>Green</u> v. <u>Illinois Department of Transportation</u>,
609 F. Supp. 1021 (N.D. Ill. 1985) .........................................................................................11

<u>International Electronic Technology Corp.</u> v. <u>Hughes Aircraft Co.</u>,
2007 U.S. App. LEXIS 1715 (Fed. Cir. Jan. 26, 2007) ..........................................................17

<u>Jumpsport, Inc.</u> v. <u>Hedstrom Corp.</u>,
2004 U.S. Dist. LEXIS 20382 (N.D. Cal. 2004).............................................................. 12, 14

<u>Kim</u> v. <u>Sara Lee Bakery Group, Inc.</u>,
412 F. Supp. 2d 929 (N.D. Ill. 2006).......................................................................................15

<u>Levinson</u> v. <u>United States</u>,
969 F.2d 260 (7th Cir. 1992) .....................................................................................................8

<u>McMillan</u> v. <u>Collection Professionals, Inc.</u>,
455 F.3d 754 (7th Cir. 2006) .....................................................................................................2

<u>New Hampshire</u> v. <u>Maine</u>,
532 U.S. 742 (2001) ................................................................................................................7, 8

<u>Pfaff</u> v. <u>Wells Electronics, Inc.</u>,
5 F.3d 514 (Fed. Cir. 1993)......................................................................................................12

<u>Polymer Industrial Products Co.</u> v. <u>Bridgestone/Firestone</u>,
211 F.R.D. 312 (N.D. Ohio 2002) .........................................................................................15

<u>Polymer Technologies, Inc.</u> v. <u>Bridwell</u>,
103 F.3d 970 (Fed. Cir. 1996) ...............................................................................................11

<u>Raymond</u> v. <u>Sakelakos</u>,
2004 U.S. Dist. LEXIS 1123 (N.D. Ill. January 28, 2004) .................................................7, 12

<u>Scarano</u> v. <u>Central R. Co.</u>,
203 F.2d 510 (3rd Cir. 1953) ...................................................................................................8

<u>Spiegel</u> v. <u>Continental Illinois National Bank</u>,
790 F.2d 638 (7th Cir. 1986) .................................................................................................11

<u>United Food & Commercial Workers Local 100-A</u>
<u>Health & Welfare Fund</u> v. <u>City Foods, Inc.</u>,
878 F. Supp. 122 (N.D. Ill. 1995) ..........................................................................................11

<u>United States</u> v. <u>Christian</u>,
342 F.3d 744 (7th Cir. 2003) ...................................................................................................8

<u>Young Engineers, Inc.</u> v. <u>U.S.I.T.C.</u>,
721 F.2d 1305 (Fed. Cir. 1983) ..............................................................................................12

## DOCKETED CASES

<u>Acumed</u> v. <u>Stryker Corp.</u>,
Case No. CV-04-513-BR .........................................................................................................13

## FEDERAL STATUTES

35 U.S.C. §271 .....................................................................................................................4, 11

## I.    <u>INTRODUCTION</u>

Granting Bosch's motion would reward Bosch for representing one thing before Judge St. Eve, and the exact opposite before this Court. Before Judge St. Eve, Bosch successfully argued that the so-called "Advanced" Power Box ("'New' Radio Charger") should not be enjoined, rather infringement of that device should be litigated in this case before this Court:

- ***Whether the new Power Box infringes*** Black & Decker's patent rights ***is an issue yet to be tried***. That issue ***must be resolved in the new lawsuit*** Black & Decker already filed against Bosch for infringement of the new Power Box.

(Ex. A, Bosch's October 10, 2006 Response Brief at 2; emphasis added).

- Black & Decker has recently commenced ***that new action. That is the forum in which Black & Decker's contentions against the new Power Box should be heard***.

(<u>Id.</u> at 6; emphasis added).

- The issue of ***whether the new Power Box infringes the Domes patent claims should be litigated in the new lawsuit*** recently filed and served by Black & Decker.

(<u>Id.</u> at 10, n. 3; emphasis added).

- Bosch should be entitled to discovery on Black & Decker's infringement claims against the new Power Box™, to have its experts weigh in these claims, and to ***have full trial on the merits of this claim.***

(<u>Id.</u> at 1). Now, after successfully arguing that the "New" Radio Charger should be litigated here, Bosch changes course and says it should have been litigated before Judge St. Eve. The doctrine of judicial estoppel was created to prevent the exact type of conduct employed by Bosch – i.e., successfully arguing inconsistent positions before two different courts. Bosch's motion must be denied because it violates the doctrine of judicial estoppel.

Bosch is also playing games with its product names and model numbers. The entire notion of an "Advanced" or "New" Radio Charger is a litigation-created fiction. The so-called "New" Radio Charger or "Advanced" Power Box did not exist until after fact discovery closed in the case before Judge St. Eve.

Initially, Bosch simply called it the PB10-CD, which was the identical designation as one of the products already accused in the case before Judge St. Eve. Bosch's witnesses testified that there were no infringement-related changes made to the device. Black & Decker proceeded with the case relying on Bosch's testimony, and by referring to the device in the same way Bosch did.

Then, on the eve of trial, Bosch suddenly claimed that the device was materially different, and started calling it the "New" Radio Charger. Bosch next argued to Judge St. Eve that the "New" Radio Charger was materially different from the other accused radio chargers, claiming it could not be included in the trial. After the jury found Bosch's PB10 and PB10-CD willfully infringed Black & Decker's patents, Bosch again successfully argued that the "New" Radio Charger was materially different, should not be included within the scope of the permanent injunction, and should be litigated *in this case.* Bosch's eleventh hour claim that the "New" Radio Charger was materially different denied Black & Decker a full and fair opportunity to litigate that device before Judge St. Eve.

Yet another, independent, reason why res judicata is inapplicable is that the "New" Radio Charger did not exist at the time the lawsuit before Judge St. Eve was filed. For all of these reasons, as outlined below, Bosch's motion should be denied.

## II.   FACTUAL DISPUTES PRECLUDE THE GRANT OF A DISMISSAL

A motion for judgment on the pleadings must take "all well pled facts alleged…as true," and must draw all inferences in favor of Black & Decker. McMillan v. Collection Professionals, Inc., 455 F.3d 754, 758 (7th Cir. 2006). As Bosch recognized, the Court may take judicial notice of the proceedings in the first case, and Black & Decker's claims should survive if relief could be granted under *any* set of facts that could be proved consistent with the allegations. Id. The disputed facts set forth below demonstrate that the "New" Radio Charger was not "litigated" in the first lawsuit. (See fact nos. 2, 3, 4, 5, 10, 14 and 15, Bosch Br. at 1-3).

Black & Decker filed this case in August 2006 shortly after the issuance of U.S. Patent No. 7,043,283 (the "'283 patent") (Ex. U), since the '283 patent had not yet issued when the discovery

phase of the prior litigation before Judge St. Eve concluded. The '283 patent is not part of Bosch's motion to dismiss. (Bosch Br. at 4, n. 1).

Black & Decker filed the earlier patent infringement case before Judge St. Eve on December 8, 2004. There is no dispute that the so-called "New" Radio Charger did not exist at that time; it was not introduced until at least October 15, 2005, perhaps even later. (Ex. H). United States Patent Nos. 6,308,059 (the "'059 patent") (Ex. S) and 6,788,925 (the "'925 patent") (Ex. T) were the subject of the first case and both were found to be infringed by Bosch's PB10 and PB10-CD products. (Ex. B, Verdict). The patents generally pertain to radio chargers. The jury in the first case found that Bosch's infringement was willful. (Id.). In fact, the evidence at trial demonstrated that: (1) "Bosch copied certain features of the [Black & Decker] radio charger and incorporated those features into the Bosch Power Box," (2) there was "clear and convincing evidence in the trial record that Bosch copied key features of Black & Decker's radio charger…," (3) the jury "concluded that Bosch did not have a good faith basis for its actions" and (4) there is no indication from the record that "Bosch took any remedial action to avoid infringement." (Ex. C, 11/20/06 Mem. & Order at 12-14; see also Ex. D, 12/22/06 Mem. & Order at 9-12).

Fact discovery in the first case closed *September 30, 2005,* with the exception of a very limited extension granted by Judge St. Eve involving two depositions deemed necessary due to Bosch's failure to make a witness available during discovery, and due to Bosch's failure to properly notice a third party witness. During discovery in the first case, Black & Decker deposed several Bosch engineers regarding the "creation" and "design" of Bosch's infringing PB-10CD radio charger. These witnesses vaguely alluded to another radio charger Bosch was working on, but testified it would not be available until *after the close of discovery:*

Q. Do you know *when Bosch intends to commercialize that unit?*

A. It will be available -- *yes, I know*.

Q. When?

A. *October 15th*.

(Ex. E, 9/21/05 Steven Cole Dep. at 161; emphasis added; see also Ex. F, 9/20/05 DeCicco Dep. at 21-22 ("[The new design] should be in our distribution center mid October.")). Bosch's designee further testified that the "new" version would retain the same name/model designation as the "old" version:

> Q.   And what is the ***model number*** that Bosch is going to [attach] to that new unit?
>
> A.   ***P B 10 CD.***

(Ex. E, 9/21/05 Cole Dep. at 161 (emphasis added); Ex. F, DeCicco Dep. at 22: ***"We decided to keep the same model number – the PB10-CD."***). Because that device was not introduced to the U.S. market until after discovery closed, there were no acts of infringement occurring during discovery. 35 U.S.C. §271.

Upon further questioning by Black & Decker, Bosch's engineers revealed that the only alleged changes to the infringing PB-10CD radio charger had nothing to do with any of the infringement issues in the case. (Ex. F, 9/20/05 DeCicco Dep. at 20-21; Ex. E, 9/21/05 Cole Dep. at 158). Bosch's technical witness admitted that as of the time of his deposition, on the eve of the discovery cutoff, these changes had not "been included in any commercially available Bosch Power Box." (Ex. E, 9/21/05 Cole Dep. at 160-61; Ex. F, DeCicco Dep. at 21-22).

Bosch never identified this "New" Radio Charger to Black & Decker at any time during discovery in responding to Black & Decker's interrogatories on the subject or otherwise. (Ex. G, Bosch's response to Black & Decker's interrogatory no. 16). It never provided a sample of the "New" Radio Charger during discovery for Black & Decker to examine. Bosch likewise never produced any documentation to Black & Decker showing that the "New" Radio Charger differed in any meaningful way from the PB10-CD found to infringe, nor has it done so to date. Without having an actual product or schematic, Black & Decker had nothing to evaluate ***during discovery.***

If, as claimed by Bosch in the first case, the "new" is truly different from the "old" radio charger, then it would have been impossible for Black & Decker to have separately accused it in the first case. For one thing, the so-called "New" Radio Charger did not exist at the time the complaint was filed in the first case. For another, it was not in the United States, and therefore could not have

been charged with infringement, until after the close of discovery in the first case. While Bosch now claims for the first time that this "New" Radio Charger was offered for sale before October 2005, Bosch provides no evidence. To the contrary, it did not issue a press release on the introduction of the "Advanced" product until December 12, 2005, well after the close of fact discovery. (Ex. H, Press Release).

After the September 30, 2005 close of fact discovery, the case moved on through expert discovery. Black & Decker's technical expert, Dr. Andrew Neuhalfen, analyzed the infringing Bosch Power Boxes and provided a report detailing his opinion concerning the infringement of the '059 and '925 patents by the Bosch Power Boxes. As part of his expert report on infringement, Dr. Neuhalfen analyzed the infringement of various Bosch radio chargers bearing the model number PB-10CD: "I conducted an examination of the Bosch Power Box units. The Bosch Power Box units that were examined were identified as Model Number PB10-CD. The serial numbers of the various Bosch Power Box units that were examined included 581001358, 584003952, 58000110, and 590002433." (Ex. I, Neuhalfen Report at 9).

One of the units upon which Dr. Neuhalfen performed his analysis is the "Advanced" Power Box. Dr. Neuhalfen called both the "new" and "old" products the "Bosch Power Box units" in his report. (Id.). Dr. Neuhalfen opined that the "new" PB-10CD infringed: "The analysis demonstrates that claim 2 of the '059 patent covers the ***Bosch Power Box unit.***" (Ex. I at 17). Bosch never addressed the "New" Radio Charger in its rebuttal expert report.

Bosch claims Judge St. Eve excluded the "New" Radio Charger from the earlier trial because it was not identified in an expert report. But her Order demonstrates that Bosch's claim lacks merit; Judge St. Eve stated "Black & Decker did not identify the New Power Box as an accused product … during **discovery**." (Ex. J, 8/23/06 Order). The Court did not say the "New" Radio Charger was not identified by an expert. To the contrary, Judge St. Eve later indicated that the "PB-10CD Advanced was subject to another lawsuit that Black & Decker filed in August 2006."). (Ex. K, 11/29/06 Mem. and Order at 3).

Based upon the testimony provided by Bosch's engineers, however, Black & Decker was well within its rights to assume that the so-called "New" Radio Charger was the same (from an infringement standpoint) as the existing models. For one thing, Bosch's engineer, Mr. DeCicco, admitted that none of the infringing features had changed from the "old" to the "New" Radio Charger:

> Q. I see. And **what step did you take, if any, to avoid potential infringement** of Black & Decker's patents?
>
>          \* \* \*
>
> THE WITNESS: **Didn't take any steps**.
>
> BY MR. LEE:
>
> Q. **Do you know whether anybody from engineering at Bosch took any steps to avoid any potential infringement** of Black & Decker's patents that were being asserted against Bosch at that time, that time being January, February 2005?
>
> A. **I don't know**.
>
>          \*\*\*
>
> Q. I see. **So Bosch just proceeded with the upgraded project without making any engineering changes to the product to avoid any infringement; is that right?**
>
> A. **Yes**.

(Ex. F, 9/20/05 DeCicco Dep. at 48-49; emphasis added). The model number did not change either -- the radio charger itself bears the model number PB-10CD; the same is true of the operating instructions provided with the units. (Exs. Q and R; see also Ex. F, DeCicco Dep. at 22).

Black & Decker proceeded with the case under the reasonable assumption the so-called "New" Radio Charger was in the litigation. That assumption was reasonable because: (1) the "New" Radio Charger also bore the model number PB-10CD; (2) Bosch's Rule 30(b)(6) designee as well as its engineers testified that (a) the name was remaining the same, (b) the only changes had nothing to do with any relevant issue in the case, and (c) no efforts were made to design around or otherwise avoid infringement; (3) Black & Decker's expert had provided an opinion that the "New" Radio Charger functioned the same as the "old" PB-10CD; and (4) the "New" Radio Charger contained all of the same infringing features as the "old" radio charger.

Black & Decker never received a full and fair opportunity to litigate the infringement of the "New" Radio Charger in the first case. Now, coming full circle, Bosch seeks to close off this case for Black & Decker with respect to the "New" Radio Charger as well. No matter how Bosch wishes to classify it, however, this is not a case involving *res judicata*. Drawing all inferences in favor of Black & Decker, there exists a genuine factual dispute as to whether the issue of infringement "could have been raised" in the first case. Raymond v. Sakelakos, 2004 U.S. Dist. LEXIS 1123, at *4 (N.D. Ill. January 28, 2004) ("The allegations of a complaint should not be dismissed for a failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief.'").

## III.   BOSCH FAILS TO PROVE ITS RES JUDICATA CLAIM

### A.   Bosch's Res Judicata Defense Is Barred By The Doctrine Of Judicial Estoppel

Bosch now claims that res judicata bars Black & Decker's infringement claims against the "New" Radio Charger because Black & Decker could have and should have litigated those infringement claims during the earlier case in front of Judge St. Eve. Bosch, however, successfully argued the exact opposite position before Judge St. Eve and, thus, its res judicata claim is barred by the doctrine of judicial estoppel.

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). The Supreme Court has stated:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

New Hampshire v. Maine, 532 U.S. at 749 (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)), see also 18 Moore's Federal Practice §134.30 (3rd Ed. 2000) ("[t]he doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a position taken by that party in a previous proceeding.").

Judicial estoppel is "a doctrine intended to prevent the perversion of the judicial process." In re Cassidy, 892 F.2d 637, 641 (7th Cir. 1990). The doctrine is intended to protect the courts against "chameleonic litigants" and hence the party invoking the doctrine need not show prejudice to rely on the doctrine of judicial estoppel. Levinson v. United States, 969 F.2d 260, 264 (7th Cir. 1992); Cassidy, 892 F.2d at 641 (quoting Scarano v. Central R. Co., 203 F.2d 510, 513 (3rd Cir. 1953) (the doctrine exists "to prevent litigants from playing fast and loose with the courts.").

The United States Supreme Court has identified three factors that a court may consider in determining whether to apply judicial estoppel: (1) a party's later position must be "clearly inconsistent" with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled"; and (3) did the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. New Hampshire v. Maine, 532 U.S. 742, 750-51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). The Seventh Circuit also considers whether the "facts at issue are the same in both cases." United States v. Christian, 342 F.3d 744, 747 (7th Cir. 2003). Judicial estoppel applies here.

> ### 1. Before Judge St. Eve, Bosch Took The Inconsistent Position That Infringement Of The "New" Radio Charger Should Be Litigated In This Case

After a seven day trial, a jury found that Bosch's PB-10 and PB-10CD Power Box radio chargers willfully infringed the two Black & Decker patents which are the subject of Bosch's motion. After trial, Bosch vigorously opposed entry of a permanent injunction, focusing mainly on excluding the "New" Radio Charger from an injunction. Bosch was adamant that infringement of the "New" Radio Charger should be litigated in this case. (See Ex. A, Bosch's Opp. at 1).

In its opposition, Bosch went on to argue extensively that the "New" Radio Charger should not be included within the permanent injunction because the issue of *infringement* of the "new" product will be tried in this lawsuit:

> Whether the new Power Box™ infringes Black & Decker patent rights is an issue yet
> to be tried. ***That issue must be resolved in the new lawsuit*** Black & Decker has
> already filed against Bosch for infringement of the new Power Box™.
>
> *     *     *     *
>
> Black & Decker has recently commenced that new action. ***That is the forum in
> which Black & Decker's contentions against the new Power Box™ should be
> heard.***
>
> *     *     *     *
>
> A permanent injunction under these facts is not proper, ***the only proper forum to
> resolve whether the new Power Box™ infringes patent rights is another trial.***

(Ex. A, Bosch's Opp. at 2, 6 & 9; emphasis added).

Bosch requested that Judge St. Eve exclude the "New" Radio Charger from the permanent

injunction because the issue of infringement will be litigated in this case:

> As such, if this Court decides to enter a permanent injunction, Bosch
> respectfully requests that this Court modify Black & Decker's Proposed Order so as
> to ***delete the language: "and any subsequent modifications of those products
> that are no more than colorably different therefrom, regardless of trade name
> or model number under which those products are sold" and to make clear
> that the injunction is not meant to cover the new Power Box™.***

(Ex. A, Bosch's Opp. at 12; emphasis added).

### 2.     Admittedly The Facts At Issue Are The Same In Both Cases

Bosch has effectively admitted that this factor is present. (Bosch Br. at 3). Moreover, the

above-cited representations made by Bosch before Judge St. Eve during briefing on the permanent

injunction confirm that this factor favors application of judicial estoppel. Those representations

involved the same "New" Radio Charger, the same Black & Decker patents at issue, and the same

issue of which forum to litigate infringement of the "New" Radio Charger

### 3.     Bosch Persuaded Judge St. Eve That Infringement Of The "New" Radio Charger Should Be Decided In This Case

After considering all of Bosch's arguments, Judge St. Eve entered a permanent injunction

order. (Ex. K, 11/29/06 Mem. & Order). Importantly, Judge St. Eve accepted Bosch's argument,

and modified Black & Decker's proposed injunction making it clear that the "New" Radio Charger

9

was not included within the scope of the permanent injunction because it was the subject of this case:

> Accordingly, the Court adopts, in part, Black & Decker's Proposed Order with the following changes:
>
> \*        \*        \*
>
> 2.   The court adds language to (1) so the subsection reads in entirety "from making, using, selling, offering or importing the Bosch Power Box Models PB-10 and/or PB-10-CD radio chargers or any merely colorable imitations thereof, **except for the Bosch Power Box Model PB-10-CD Advanced, which is the subject matter of another lawsuit, Case No. 06 C 4440, in the United States District Court for the Northern District of Illinois;**"

(Ex. K, 11/29/06 Mem. & Order at 9; emphasis added).  Additionally, Judge St. Eve ruled "the permanent injunction does not pertain to the new Power Box radio charger, Model PB10-CD Advanced, which is subject of another lawsuit in this district." (Id. at 10).  Bosch also admits that Judge St. Eve relied upon Bosch's own argument in keeping the "New" Radio Charger out of the first case: "**there is evidence in the record** indicating that **the PB-10CD Advanced has different features from the old Power Box radios**…" (Id. at 5; emphasis added).  This "evidence" (which Judge St. Eve accepted in making her decision) came solely and directly from Bosch's attorneys.  Bosch cannot now say the exact opposite to avoid adjudication on infringement in this case.

### 4.    Allowing Bosch To Successfully Argue Inconsistent Positions Would Provide Bosch An Unfair Advantage

As outlined above, Bosch successfully avoided entry of a permanent injunction against the "New" Radio Charger by successfully arguing that infringement of that device should be tried in this case.  (Ex. K, 11/29/06 Mem. & Order).  Allowing it to argue the exact opposite now, namely that infringement should have been tried in the earlier case, would deny Black & Decker a fair opportunity to obtain a permanent injunction against the "New" Radio Charger.  In essence, Bosch is playing a model number or name game with this District Court.  Bosch's fast and loose gamesmanship was the exact reason the doctrine of judicial estoppel was created to prevent a litigant like Bosch, from successfully arguing the exact opposite before two different judges.

### B. The "Advanced" Product Did Not Come Out Until After The First Lawsuit Was Filed

The facts giving rise to this lawsuit did not exist at the time the earlier lawsuit was filed. In its statement of undisputed facts, Bosch admits that Black & Decker initiated the so-called "First Lawsuit" in December 2004. (Bosch Statement Of Fact ("SOF") No. 1). Bosch admits three different models exist, the two litigated in the first case and found to willfully infringe Black & Decker's patents, the PB-10 and PB-10CD radio chargers, and what Bosch told Judge St. Eve was its "New" Radio Charger, what it now calls the "PB-10CD Advanced." (SOF 2). Bosch also admits that it first imported the "New" Radio Charger only in October 2005, **after** the close of discovery in the first case. (SOF 3). There is no evidence that the "New" Radio Charger was made [in the U.S.], offered for sale [in the U.S.], sold or imported (acts of infringement) prior to September 30, 2005. 35 U.S.C. §271; see also Polymer Technologies, Inc. v. Bridwell, 103 F.3d 970, 976 (Fed. Cir. 1996) ("no suit could properly have been brought absent evidence of Westmark's infringing activities."). Based upon these admission alone there can be no finding of *res judicata*.

Even beyond Bosch's admissions, *res judicata* does not apply because this case relates to a new infringing product introduced nearly a year after the complaint in the first case was filed. Spiegel v. Continental Illinois Nat'l Bank, 790 F.2d 638, 646 (7th Cir. 1986) (holding that res judicata does not bar a second lawsuit where predicate acts occurred after the filing of the first lawsuit); Doe v. Allied-Signal, Inc., 985 F.2d 908, 915 (7th Cir. 1993) (finding that a plaintiff need not amend her pleadings to include issues that arise after the original suit is lodged in order to avoid application of res judicata); Green v. Illinois Dept. of Transportation, 609 F.Supp. 1021, 1024-26 (N.D. Ill. 1985) (holding that conduct which occurred after the filing of the first complaint but before judgment in the first lawsuit is not barred by res judicata); United Food & Commercial Workers Local 100-A Health & Welfare Fund v. City Foods, Inc., 878 F.Supp. 122, 123-24 (N.D. Ill. 1995) ("However, a defendant's continuing course of conduct, even if related to conduct complained of in the earlier lawsuit, generally creates a separate cause of action.")(citing cases). Bosch cannot ignore fundamental tenets of patent law to press its position.

### C.    The "New" Radio Charger Was Never Litigated In The First Case

As outlined above, Bosch successfully petitioned Judge St. Eve to exclude the "New" Radio Charger on the eve of trial.   However, Judge St. Eve realized that:   "***the appropriate way*** of addressing whether the PB-10-CD Advanced infringes the continuation of the patents-in-suit ***is to proceed by way of Black & Decker's new lawsuit***."   (Ex. K, 11/29/06 Mem. & Order at 5; emphasis added).   Thus, Judge St. Eve recognized that the "New" Radio Charger was not "actually litigated" in the first case.   Chromalloy American Corp. v. Kenneth Gordon, Ltd., 736 F.2d 694, 697 (Fed. Cir. 1984).   The issue of an infringement was not actually decided.   Black & Decker was prevented from having a full and fair opportunity to litigate the infringement of the "New" Radio Charger in the first case.   Id.

Clearly, then, as a result of Bosch's efforts the "New" Radio Charger was never in the first case.   This, too, is contrary to the principles of *res judicata*.   Young Engineers, Inc. v. U.S.I.T.C., 721 F.2d 1305, 1316-17 (Fed. Cir. 1983)(Under principles of *res judicata* an infringement claim does not embrace more than the specific devices before the court in the first suit).   As Bosch admitted, "the issue of whether the "New" Radio Charger infringes the Domes patent claims should be litigated in the new lawsuit recently filed and served by Black & Decker."   (Ex. A at 10, n.3).   Pfaff v. Wells Electronics, Inc., 5 F.3d 514, 517 (Fed. Cir. 1993)("A device not previously before the court, and shown to differ from those structures previously litigated, requires determination on its own facts.")(citing cases).   That "new lawsuit" is this case.

Black & Decker was precluded from having a full opportunity to litigate the infringement of the "New" Radio Charger in the first case.   Raymond v. Officer James Sakelakos, 2004 U.S. Dist. LEXIS 1123 *5 (N.D. Ill. 2004) (lack of a full and fair opportunity to litigate a claim is an exception to the doctrine of res judicata).   Bosch cannot have it both ways.   Because the opportunity to litigate the "New" Radio Charger in the first case has now passed, the only option left is to litigate its infringement here.   Jumpsport, Inc. v. Hedstrom Corp.   2004 U.S. Dist. LEXIS 20382, *6 (N.D. Cal. 2004)(Finding "it somewhat disingenuous for [defendant] to claim that the court has somehow rendered a verdict of non-infringement for devices that [defendant] itself claimed were not at issue

in the first trial, for which no judgment was entered…").[1]   Indeed, under Jumpsport, it would be a

violation of due process to deny Black & Decker the opportunity to litigate the infringement of

Bosch's "New" Radio Charger.

A grant of Bosch's present motion would prevent Black & Decker from having the

opportunity to present its infringement case on the "New" Radio Charger.   This is especially

egregious as it was Bosch which functioned as the catalyst for keeping the product out of the case.

## IV.   THE ACUMED V. STRYKER CASE IS INAPPOSITE

Bosch relies primarily on a single case from the District of Oregon to support its *res judicata*

argument.  Of course, that case, Acumed LLC v. Styker Corporation, et al., 2006 U.S. Dist. LEXIS

81932 (D. Or. 2006), is non-binding precedent particularly because it applied Ninth Circuit law.  Id.,

at * 14-15.

Importantly, there is a key difference between the Acumed case and this case which renders

Acumed factually inapposite.  The court in Acumed actually ***offered to allow the plaintiff to add***

***the new product to the lawsuit*** but only if the trial date, which was only three weeks away, was

substantially delayed.  In this case, the exact opposite occurred: Bosch successfully convinced Judge

St. Eve to exclude what it called the "New" Radio Charger on the eve of trial in order to maintain

the existing trial date.  The Court did not give Black & Decker the choice the Acumed plaintiff

received.

Acumed learned that the new product had been introduced in April, 2005, after discovery

had closed.   Acumed v. Stryker Corp., 2006 U.S. Dist. Lexis 81932, at *2.   The Court viewed

Acumed's attempt to introduce the new products as a motion to amend under Rule 15.  (Ex. L,

8/19/05 Hearing Tr., Acumed v. Stryker Corp., Case No. CV-04-513-BR).

The court in Acumed specifically ***gave Acumed the opportunity to add the new product***

***to the case,*** albeit at the cost of significant delay in the existing trial date:

> Before Acumed I went to trial on September 13, 2005, the Court offered to
> allow Plaintiff to litigate any potential T2 Long patent-infringement claims in
> Acumed I.  In a telephone conference held August 19, 2005, however, the Court

---

[1]   Jumpsport has been cited as precedent in both Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc., 2006 U.S.
Dist. LEXIS 41749 (N.D. Cal. June 13, 2006) and the Acumed case relied upon by Bosch.  See Section IV below.

noted a necessary consequence of including the T2 Long in Acumed I would be a significant delay (perhaps as much as one year) in the existing trial date.

Acumed v. Stryker Corp., 2006 U.S. Dist. Lexis 81932, at *3.

In order to preserve the trial date, the Acumed **plaintiff chose** not to add the new product. Id., at *5. That opportunity and decision factored heavily in the court's conclusion to apply *res judicata*. Indeed, the Acumed court distinguished Jumpsport v. Hedstrom Corp. because of the declined opportunity to add the new product:

> The Court notes some courts have recognized exceptions to the application of *res judicata* when formal barriers to litigation prevent a claim from being brought in an earlier case and interfere with a plaintiff's full and fair opportunity to bring that claim. Plaintiff cites Jumpsport v. Hedstrom Corp., 2004 U.S. Dist. LEXIS 20382, No. C 04-0199 PJH, 2004 WL 2203556 (N.D. Cal. Sept. 2004), as an example. The Jumpsport court held when a plaintiff faces formal barriers to litigation such as a court order barring the plaintiff from bringing a particular claim in the first action, it is unfair to preclude the plaintiff from filing a second action to bring those formerly barred claims. 2004 U.S. Dist. LEXIS 20382, [WL] at 2. Jumpsport, however, is distinguishable. Here the prospect of a lengthy delay in the trial of Acumed I was not a "formal" impediment that barred Plaintiff from litigating its contentions about the T2 Long.

Acumed v. Stryker Corp., 2006 U.S. Dist. Lexis 81932, at * 20-21.

In this case, the exact opposite occurred: **at the request of Bosch** by way of a motion *in limine*, the court excluded the "New" Radio Charger on the eve of trial. Rather than reopening discovery, both Bosch and the trial court recognized that discovery could occur in the new suit, this suit. (Ex. A, Bosch Opp. at 1: "Bosch should be entitled to discovery on Black & Decker's infringement claims against the New Power Box…"; Ex. K at 3: "… the PB10-CD Advanced is the subject of another lawsuit that Black & Decker filed in August 2006…"). Unlike in Acumed, Black & Decker was never given the opportunity to choose whether to add the new product; it was simply excluded at Bosch's request. Indeed, in its motion *in limine*, Bosch argued extensively that it would be prejudiced by adding the "New" Radio Charger on the eve of trial. (Ex. M, Bosch's Motion *In Limine* at 4). Likewise, the Polymer case relied on by Bosch (Bosch Br. at 9) is inapposite because the patentee was provided an opportunity to conduct a trial on the infringing product in the first case, but was precluded from collecting **damages** on the same patent and products in the second

14

case.  Polymer Indus. Prods. Co. v. Bridgestone/Firestone, 211 F.R.D. 312 (N.D. Ohio 2002).

Here, Black & Decker was not provided any opportunity for a trial on the "New" Radio Charger.

Just like in the Jumpsport case, Bosch was successful in convincing the court to exclude the

new product in a motion *in limine*:

> … Because of the prejudice to Bosch of adding the new Power Box as an accused
> product for purposes of Black & Decker's infringement claims, the Court grants
> Bosch's motion *in limine*.

(Ex. J, 8/23/06 Order).

Bosch also cites Kim v. Sara Lee Bakery Group, Inc., 412 F.Supp.2d 929 (N.D. Ill. 2006) but

that case is factually inapposite.  To begin, that case is not a true *res judiata* case because there was no

final judgment in the earlier action.  The case was a patent infringement case where, despite seeking

and being granted four separate extensions of the discovery cut-off, the plaintiff failed to

supplement its interrogatory answers to identify any additional accused products other than the two

identified in its initial interrogatory response.  Id. at 931-33.  During the fourth discovery extension,

the defendant identified 648 bread formulas, all of which were being sold (an act of infringement at

that time).  Id. at 932.  After the close of fact discovery, the plaintiff was granted leave and filed an

amended complaint identifying new types of accused product, but failed to identify the vast majority

of bread formulas to be accused of infringement.  Several months later, the plaintiff attempted to

add 450 infringing formulas to the case.  Id. at 933.  The court ultimately denied the plaintiff's

attempt to add 450 new infringing formulas.

The Kim case is clearly inapposite.  Unlike Kim, here there is no evidence of infringement

by the new "Advanced" product because it was not offered or sold until after the close of fact

discovery; nor was Black & Decker ever given the opportunity to add the "Advanced" product to

the case.  Instead, when Black &Decker attempted to include it within the first case, it was barred by

the Court at the urging of Bosch.  Black & Decker was not provided with an opportunity to add the

product.

Further, the focus of the district court's opinion in the <u>Kim</u> case addressed the compulsory counterclaim role under Rule 13(a) because the defendant in the first case had asserted a broad counterclaim of noninfringement with respect to all its formulas. <u>Id.</u> at 935-38. Bosch never asserted a counterclaim of noninfringement in the earlier case, thus, Rule 13(a) does not apply.

Both <u>Civix-DDI, LLC</u> v. <u>Expedia, Inc.</u>, 2005 U.S. Dist. LEXIS 9493 (N.D. Ill. 2005) and <u>AMEX</u> v. <u>Mopex, Inc.</u>, 215 F.R.D. 87 (S.D.N.Y. 2002) (Bosch Br. at 9) involved "claim splitting" where the patentee was precluded from asserting different claims from the ***same patent*** against the ***exact same product*** in any further litigation. Here, Black & Decker is accusing a new product of infringement; not adding new claims from the '059 and '925 patents against the old product. Additionally, in both cases, the product accused of infringement in the first case actually existed during discovery.

Unlike the cases relied on by Bosch, Black & Decker was never given the choice to add the new product. Black & Decker never had a full and fair opportunity to litigate infringement of the "New" Radio Charger.

## V.    BOSCH'S ALTERNATE REQUEST
##       FOR A STAY SHOULD ALSO BE DENIED

Bosch's alternate effort to stay this case should likewise be denied. It has lost each and every post trial motion it filed as well as its inequitable conduct defense, on the basis of well written and well considered orders from Judge St. Eve. (See Exs. C, D, K, N and O). The claims of the '925 and '059 patents asserted here have already been held valid, infringed and not procured through inequitable conduct. (See Ex. O, 10/24/06 Mem. Opinion). After a full trial, the jury returned a verdict finding claims 1, 2, 6, 7 and 10 of the '059 patent and claim 1 of the '925 patent valid. (Ex. B, Verdict). Additionally, Judge St. Eve held that "Bosch has failed to establish that the jury committed a manifest error of fact" in upholding the validity of the claims asserted here. (Ex. N, 1/12/07 Mem. & Order at 20).

As for inequitable conduct, Judge St. Eve conducted a bench trial on Bosch's defense that the '059 and '925 patents were unenforceable due to inequitable conduct. (Ex. O, 10/24/06 Mem.

& Order). Judge St. Eve, after hearing testimony and weighing the evidence, wrote a 14-page Memorandum Opinion and Order denying Bosch's inequitable conduct claim concluding:

> Bosch has failed to provide a factual basis for a finding of deceptive intent by clear and convincing evidence…. Because Bosch has failed to establish the intent element by clear and convincing evidence, Bosch's claim of inequitable conduct fails.

(Id. at 14 (citations omitted)). Finally, Judge St. Eve denied Bosch's motion for judgment as a matter of law regarding infringement concluding that the jury's finding of infringement was supported by the evidence. (Ex. N, 1/12/07 Mem. & Order). It is highly doubtful that any of these issues will be overturned on appeal at the Federal Circuit.

Moreover, Bosch still cannot get straight what it is appealing. Its efforts to piecemeal-appeal the denial of its inequitable conduct allegations has already been rejected once by the Federal Circuit (Ex. P, Order) and is contrary to established precedent, International Electronic Technology Corp. v. Hughes Aircraft Co., 2007 U.S. App. LEXIS 1715 (Fed. Cir. Jan. 26, 2007).

As a result, a stay of anything here in this case only serves to deny Black & Decker for an indeterminate amount of time its right to enforce its patents and keep Bosch out of the radio charger market. Bosch is a willful infringer and should not be permitted to continue to fill the marketplace with infringing product while this case is stayed pending a long drawn-out appeal.

## VI.  **CONCLUSION**

For the reasons set forth above, Black & Decker respectfully requests that this Court deny Bosch's motion to dismiss.

Respectfully submitted,

/s/ Dean D. Niro
Dean D. Niro
NIRO, SCAVONE, HALLER & NIRO
181 West Madison, Suite 4600
Chicago, Illinois 60602-4515
*Attorneys for Plaintiffs Black & Decker Inc.*
*and Black & Decker (U.S.) Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **BLACK & DECKER'S RESPONSE IN OPPOSITION TO BOSCH'S MOTION THAT RES JUDICATA BARS ALL CLAIMS RELATING TO U.S. PATENT NOS. 6,308,059 AND 6,788,925, OR IN THE ALTERNATIVE, FOR A STAY PENDING APPEAL** was served upon the below-listed counsel of record via CM/ECF on the 2nd day of March 2007:

> Jon R. Trembath
> Kirstin L. Stoll-DeBell
> Merchant & Gould, P.C.
> 1050 17th Street, Suite 1950
> Denver, CO 80265-0100
> (303) 357-1670
> Fax: (303) 357-1671
>
> Erik G. Swenson
> Elizabeth J. Reagan
> Merchant & Gould, P.C.
> 3200 IDS Center
> 80 South Eighth Street
> Minneapolis, MN 55402
>
> Todd M. Rowe
> Merlo, Kanofsky Brinkmeier & Gregg, Ltd.
> 208 South LaSalle Street
> Suite 950
> Chicago, IL 60604
> (312) 553-5500
> Fax: (312) 553-1586

/s/ Dean D. Niro
Attorney for Black & Decker