IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLACK & DECKER, INC. and ) | |
| BLACK & DECKER (U.S.) INC., ) | |
|    Plaintiff, ) | |
| ) | |
|       v. ) | Judge Blanche M. Manning |
| ) | Case No. 06 C 4440 |
| ) | |
| ROBERT BOSCH TOOL CORP., ) | |
|    Defendant. ) | |
| _____) | |

## MEMORANDUM AND ORDER

Bosch's motion for judgment on the pleadings [35-1] is before the court. For the reasons stated below, the motion is granted.

**I.    Background**

In December 2004, Black & Decker sued Bosch asserting that Bosch's Power Box jobsite radios infringed U.S. patent Nos. 6,308,059 and 6,788,925 ("Previously Asserted Patents"). That case, 04 C 7955, was heard by Judge St. Eve of this district.

There are three different models of the Bosch Power Box radio: PB-10, PB-10CD ("Old Power Box"), and PB-10CD Advanced ("New Power Box"). Prior to trial, Judge St. Eve granted Bosch's motion in limine to preclude Black & Decker from raising new accused products at trial (i.e., the New Power Box). Specifically, Judge St. Eve stated that:

> After reviewing the parties' submissions, it is clear that Black & Decker did not identify the new Power Box as an accused product and did not disclose during discovery its contention that the new Power Box infringed the patents at issue in this case. Because of the prejudice to Bosch of adding the new Power Box as an accused product for purposes of Black & Decker's infringement claims, the Court grants Bosch's motion in limine.

Minute Order of August 23, 2006, No. 04 C 7955, Docket # 375. After a jury trial, a judgment

for willful infringement was entered in September 2006 against Bosch as to certain claims of the Previously Asserted Patents.

On August 17, 2006, Black & Decker filed the instant suit alleging that the New Power Box infringed U.S. Patent No. 7,043,283 ("New Patent"). After Judge St. Eve granted Bosch's motion in limine as noted above, Black & Decker then amended its complaint in the instant action to allege that the New Power Box also infringed the Previously Asserted Patents.

Bosch now seeks judgment on the pleadings regarding Black & Decker's claim of infringement on the Previously Asserted Patents contending that this claim is barred by res judicata.

## II.     Standard

The standard of review for a motion for judgment on the pleadings is the same as that for a motion under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *R.J. Corman Derailment Services, LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003). Facts alleged in the complaint are viewed in the light most favorable to the non-moving party, and judgment may not be granted unless it appears beyond a doubt that the non-moving party cannot provide facts that would support his claim. *Id*. A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) may only be granted if no material issues of fact remain to be resolved between the parties. *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1986).

"Although in evaluating a motion for judgment on the pleadings under Rule 12(c) '[a] district court may not look beyond the pleadings,' the court 'may take into consideration documents incorporated by reference to the pleadings' and 'may also take judicial notice of

matters of public record.'" *Boeckman v. A.G. Edwards, Inc.*, 461 F. Supp. 2d 801 (S.D.Ill. 2006)(citation omitted). A court may "take judicial notice of 'proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to the matters at issue.' This is true even though those proceedings were not made part of the record before the district court." *United States v. Hope*, 906 F.2d 254, 260 n.1 (7th Cir. 1990)(citations omitted). In the instant case, both parties agree that the court may take judicial notice of the proceedings in the matter before Judge St. Eve and, indeed, each party extensively cites to the proceedings in that case.

**III.     Analysis**

   A.     Res Judicata

Bosch contends that res judicata bars Black & Decker's cause of action for infringement on the Previously Asserted Patents. Because "[t]his case turns on general principles of claim preclusion, not on any rule of law having special application to patent cases" the law of the circuit applies rather than the federal circuit. *Mars Inc v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 618 (Fed. Cir. 1995). Bosch expressly so states and Black & Decker is silent on the issue.

For the doctrine of res judicata to apply, three elements must exist: (1) a final judgment on the merits; (2) between the same parties or their privies; and (3) involving the same causes of action. *Cent. States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 628 (7th Cir. 2002). Res judicata bars litigation not only of those issues actually decided in a previous lawsuit, but also all issues that could have been raised in the prior action. *New Hampshire v. Maine*, 532 U.S. 742, 748-49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001);

*Publicis Communication v. True N. Communications Inc.*, 132 F.3d 363, 365 (7th Cir. 1997). "A pending appeal does not prevent the application of collateral estoppel or res judicata." *Berry v. Illinois Dept. of Human Services*, 00 C 5538, 2001 WL 111035, at *14 (N.D. Ill. Feb. 2, 2001) (*citing Prymer v. Ogden*, 29 F.3d 1208, 1213 n. 2 (7th Cir.), *cert. denied*, 513 U.S. 1057 (1994) (dictum noting that "it is clear that the [Seventh Circuit] has adhered to the general rule in American jurisprudence that a final judgment of a court of first instance can be given collateral estoppel effect even while an appeal is pending")) (other citations omitted).

The court finds that the elements of res judicata are met in this case.

### 1. Final Judgment

This element is met in that final judgment on the jury verdict in the prior case before Judge St. Eve was entered on September 22, 2006. Moreover, all post-trial motions have been ruled upon by Judge St. Eve and notices of appeal have been filed by both parties. *Hill v. Potter*, 352 F.3d 1142, 1144 (7th Cir. 2003)("The test [for finality] is whether the district court has finished with the case.")(citations omitted).

### 2. Same Parties

The parties in the two lawsuits are identical.

### 3. Same Causes of Action

"A claim has 'identity' with a previously litigated matter if it emerges from the same 'core of operative facts' as that earlier action." *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338-39 (1995)(citations omitted). In other words, claims are the same if they are "based on the same, or nearly the same, factual allegations." *Id*. at 339 (citation omitted).

As noted by Bosch, Black & Decker has admitted that the claims in front of Judge St. Eve

are the same as those at issue in this court. Indeed, in Black & Decker's motion to reassign the instant case to Judge St. Eve, Black & Decker asserted that:

> 1. Both cases involve the same property, i.e., plaintiff's patents-in-suit;
> 2. Both cases involve the same accused product, i.e., defendant's Power Box;
> 3. Both cases involve the same issues of fact, as Bosch sells the Power Box products accused in the present case, as well as the so-called 'new' Power Box which is also alleged to infringe the same patents;
> 4. Both cases involve the same issues of law; in both cases Bosch has made essentially identical allegations of non-infringement and invalidity of the patents in suit and inequitable conduct as well as the resurrection of claims already stricken from this case . . . .

Thus, all of the elements for res judicata are satisfied.

The court notes at the outset that Black & Decker never addresses whether the elements of res judicata are satisfied but merely asserts that res judicata does not apply for the following reasons: (1) the doctrine of judicial estoppel prevents Bosch from asserting the defense of res judicata; (2) Black & Decker could not have litigated its claim as to the New Power Boxes and (in a somewhat related argument); (3) Black & Decker did not litigate its claim as to the New Power Box in front of Judge St. Eve. These arguments are addressed in turn below.

B. <u>Judicial Estoppel</u>

"Judicial estoppel provides that when a party prevails on one legal or factual ground in a lawsuit, that party cannot later repudiate that ground in subsequent litigation based on the underlying facts." *Urbania v. Cent. States, S.E. and S. W. Areas Pension Fund*, 421 F.3d 580, 589 (7th Cir. 2005). For judicial estoppel to apply, three requirements must be met: "(1) the latter position must be clearly inconsistent with the earlier position; (2) the facts at issue must be the

same in both cases; and (3) the party to be estopped must have prevailed upon the first court to adopt the position." *Id.*

*Inconsistent Position*

According to Black & Decker, Bosch should be precluded from raising the defense of res judicata because Bosch argued in front of Judge St. Eve that the infringement of the New Power Box should be litigated in the instant action rather than before her. Specifically, after the trial before Judge St. Eve, Black & Decker sought a permanent injunction. Bosch opposed the request generally and noted that Black & Decker's proposed language enjoining "any subsequent modifications of those products that are no more than colorably different therefrom, regardless of trade name or model number. . . ." could include the New Power Box. Bosch contended, among other things, that such language would subvert the ruling on the motion in limine which excluded from trial any new accused products (i.e, the New Power Box), and asserted that any infringement determinations as to the New Power Box would have to be made in the "new" (i.e., instant) action. This argument, Black & Decker asserts, judicially estops Bosch from now arguing that res judicata bars Black & Decker's instant claims of infringement of the Previously Asserted Patents by the New Power Box.

"Precedent teaches that the threshold for prevailing on a judicial estoppel argument regarding inconsistency is high–the two positions must be 'clearly inconsistent.'" *Kim v. Sara Lee Bakery Group, Inc.*, 412 F. Supp. 2d 929, 939 (N.D. Ill. 2006)(citations omitted). Black & Decker has not met this high threshold.

As an initial matter, Bosch was successful on its motion in limine to exclude Black & Decker from asserting at trial infringement by the New Power Box. Simply because Bosch

opposed Black & Decker's post-trial request for a preliminary injunction which included language that could conceivably have encompassed the New Power Box does not preclude it from raising a defense in the instant action.

Moreover, Bosch expressly anticipated the res judicata argument before Judge St. Eve. In Bosch's reply in support of its motion in limine, it refuted Black & Decker's proposal that if the New Power Box was not part of the action in front of Judge St. Eve, then it should be included in any new lawsuit involving "these and other Black & Decker patents." Specifically, Bosch argued that "Black & Decker should also be precluded from accusing the [New Power Box] of infringing the patents-in-suit in the future" citing cases regarding res judicata in support. Bosch noted, however, that "resolution of this issue is for another day and another court assuming Black & Decker carries through with its groundless threat [to assert infringement of the Previously Asserted Patents by the New Power Box]." In her ruling on the motion in limine, Judge St. Eve expressly declined to consider the "alternatives" (i.e., that infringement of the Previously Asserted Patents by the New Power Box be included in any future lawsuit) offered by Black & Decker.

In opposing the motion for a permanent injunction, Bosch was merely protecting the rights it had obtained from the favorable ruling on the motion in limine while at the same time noting its position that res judicata would bar any future claims as to the Previously Asserted Patents and the New Power Box. That Bosch is now asserting that defense is not clearly inconsistent with its opposition to the preliminary injunction. *See Kim*, 412 F. Supp. 2d at 938-39 (finding not clearly inconsistent defendant's motion in previous case to bar evidence of additional formulas disclosed by the plaintiff through late supplementation of discovery

responses and its motion to dismiss plaintiff's second action based on those same formulas).

Because the court finds that the positions are not clearly inconsistent, it will not proceed with an analysis of the other factors. Black & Decker's judicial estoppel argument is rejected.

  C. <u>Could Black & Decker Have Litigated the New Power Box?</u>

Res judicata bars not only the claims actually raised in the earlier suit, but also any claims that could have been raised in that suit. *Highway J Citizens Group v. U.S. Dep't. of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006). Black & Decker argues that res judicata cannot apply because the New Power Box did not come out until after its first case was filed in front of Judge St. Eve in December 2004. *Speigel v. Continental Illinois National Bank*, 790 F.2d 638, 646 (7th Cir. 1986) (second lawsuit not precluded by res judicata where RICO predicate acts of mail fraud occurred after the first action was filed).

Interestingly, Black & Decker also argues at other points in its response brief (as well as in filings before Judge St. Eve) that it thought all along that it was litigating the New Power Box in the case before Judge St. Eve. Indeed, had Judge St. Eve denied Bosch's motion in limine, Black & Decker would have proceeded to try the New Power Box as part of its case in front of Judge St. Eve and would have included the New Power Box in any damages award and injunction order that was entered. Thus, from a general logic standpoint, Black & Decker's argument is on weak ground.

Moreover, another district court which has addressed a similar factual scenario concluded that res judicata applies when the patent at issue in the second suit existed and could have been litigated during the pendency of the first suit. In *Acumed LLC v. Stryker Corporation*, No. 06-CV-642-BR, 2006 WL 3253115 (D. Or. Nov. 6, 2006)("*Acumed II*"), the defendant sought to

prevent the plaintiff from bringing a second patent infringement action relating to a nail used to treat certain bone fractures. The original action ("*Acumed I*") related to the defendant's sale and manufacture of the T2 proximal humeral nail ("T2 PHN"). During that litigation, the defendants began publicly marketing and selling the T2 Long, another proximal humeral nail, in the United States. A few weeks prior to trial, the plaintiff filed a motion to compel production of a physical sample of the T2 Long and disclosure of relevant sales data. *Id.* at *1. The plaintiff inspected it and "argued the T2 Long was substantially similar to the T2 PHN and, therefore, also might infringe the . . . patent [at issue]." *Id*. Prior to going to trial, the court offered the plaintiff the opportunity to litigate the T2 Long infringement claims in that suit, but the plaintiff declined the offer in order to keep the existing trial date. The plaintiff then filed the second action, *Acumed II*, alleging that the T2 Long infringed the same patent at issue in *Acumed I*.

In granting the defendant's Rule 12(b)(6) motion to dismiss on res judicata grounds, the district court concluded that "Plaintiff's T2 PHN and T2 Long infringement claims arise from the same transactional nucleus of facts and, therefore, could have been tried together in *Acumed I* using substantially the same evidence if Plaintiff had chosen to do so." *Id*. at *7.

As to the timing of the plaintiff's knowledge of the second infringing device, the court stated:

> The timing of the potential infringement by the T2 Long does not alter the Court's conclusion even though Plaintiff filed its Complaint in *Acumed I* on April 14, 2004, and Defendants did not begin marketing or selling the T2 Long in the United States until April 2005. 35 U.S.C. § 271, the statute governing patent infringement, would not have applied to the T2 Long before April 2005 because patent infringement liability only attaches when a party, without authority, makes, uses, or sells a patented invention. *See Lang v. Pac. Marine and Supply Co., Ltd.*, 895 F.2d 761, 765 (Fed. Cir. 1990). As noted, however, Plaintiff knew Defendants were marketing and selling the T2 Long in the United States well before the final adjudication of *Acumed I*, and the Court gave Plaintiff the

opportunity to litigate the potential infringement of the T2 Long in *Acumed I*.

*Id*.

Similarly, in the instant case, Black & Decker was aware that Bosch was creating an "upgraded" radio. Its impression that the upgraded radio was exactly the same thing as the radios at issue before Judge St. Eve apparently turned out to be incorrect but, as discussed below, was of its own making. While Bosch may not have begun developing the New Power Box until after the first case was filed, Black & Decker knew and could have sought additional discovery about the New Power Box prior to the close of discovery, and if necessary, formally added the product to the lawsuit either through amended pleadings or supplemental discovery responses. It, for whatever reason, chose not to do so.

Black & Decker asserts that *Acumed II* is distinguishable on the ground that in that case, the court in *Acumed I* offered the plaintiff the opportunity to litigate the T2 Long in that case and the plaintiff declined. However, the *Acumed II* court expressly noted that:

> Even if the Court had not provided Plaintiff with such an opportunity, Plaintiff could have made a motion to the Court for leave to file a supplemental pleading under Federal Rule of Civil Procedure 15(d) for the purpose of alleging transactions, occurrences, or events pertaining to the T2 Long that took place after the date of Plaintiff's original Complaint.

*Id*. (citations omitted); *see also Civix-DDI, LLC v. Expedia, Inc*., 2005 WL 1126906, No. 04 C 8031, at *4 (N.D. Ill. May 2, 2005)(granting motion to dismiss second patent infringement action by same plaintiff as to same patents and same technology on ground that claim-splitting prevented plaintiff from "assert[ing] new patent claims that it should have timely brought in the Initial Action."). Black & Decker's counsel are sophisticated intellectual property litigators who do not require an invitation from the court to fully and aggressively assert their client's claims.

Black & Decker also contends that no act of infringement took place prior to the close of fact discovery and thus it could not have sued Bosch any earlier than it did. 35 U.S.C. § 271 ("Except as otherwise provided in this title, whoever without authority *makes, uses, offers to sell, or sells* any patented invention, within the United States or *imports into the United States* any patented invention during the term of the patent therefor, infringes the patent.") (emphasis added). However, as noted by Bosch, one of its witnesses, John DeCicco, a project leader and test lab engineer at Bosch, testified on September 20, 2005 (prior to the close of fact discovery in the Judge St. Eve case) that he had seen or made "about 20" of the upgraded (i.e., New) Power Box. When asked if the prototypes of the "upgraded" Power Box were available for inspection at the Mount Prospect facility, he indicated that "[s]ome of them might." DeCicco dep. at 142. Moreover, another Bosch employee, Steven Cole, testified on September 21, 2005, that Bosch had received a new radio prototype on January 18, 2005. Cole dep. at 159. Further, one of the trial exhibits used by Black & Decker in front of Judge St. Eve was a March 29, 2005, Bosch e-mail stating that the first shipment of the New Power Boxes from China was scheduled to occur on July 10, 2005.

Thus, Black & Decker was aware prior to the end of fact discovery that prototypes of the upgraded product existed and these either had to have been made in the United States or imported. Accordingly, Black & Decker had information which should have indicated that a basis for filing suit as to the New Power Box existed prior to the close of fact discovery in the case before Judge St. Eve. Thus, Black & Decker's argument that no evidence existed of an infringing act as to the New Power Box is rejected.

As to its argument that res judicata is inapplicable because the New Power Box did not

come out until after the first case was filed, Black & Decker seeks to have its cake and eat it too. It wants the court to rely on its assertion that it thought it was litigating the New Power Box in front of Judge St. Eve (apparently without properly so disclosing in that case), but after an unfavorable ruling on Bosch's motion in limine, argue that res judicata does not apply here because the New Power Box did not come out until after the first case was filed and thus it could not have litigated the claim before Judge St. Eve. If judicial estoppel is applicable at all in this case, it is to Black & Decker's argument, not Bosch's.

"Res judicata is designed to ensure the finality of federal judgments in order to encourage reliance on judicial decisions, bar vexatious litigation, and free courts to resolve other disputes." *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 913 (7th Cir. 1993)(*citing Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979)). What Black & Decker advocates completely undermines these goals by rewarding it for attempting to litigate the New Power Box in front of Judge St. Eve and then, when precluded from addressing the New Power Box at trial in that case because it failed to timely disclose its intent to do so, seeking to litigate what the parties admit are the exact same claims as to the exact same patents. This court cannot countenance a litigation strategy which needlessly duplicates the efforts of all involved.

Had Black & Decker disclosed its intentions to litigate the New Power Box (by amending its complaint or supplementing discovery responses), the infringement claims against the New Power Box as to the Previously Asserted Patents would have been litigated in the case in front of Judge St. Eve, thus preserving scarce judicial resources, among other things. Accordingly, on the facts of this case, Black & Decker's reliance on cases stating that events or conduct which occurs after the filing of the complaint in the first action is not subject to res judicata is unavailing.

*Zurich Capital Markets v. Coglianese*, 383 F. Supp. 2d 1041, 1047-48 (N.D. Ill. 2005)(fact that plaintiff learned of facts for newly pled claims did not bar application of res judicata where plaintiff conceded that it learned of the basis for the newly-pled claims while the first action was pending).

  D.  Opportunity to Litigate

  Finally, in an argument that appears related to the previous one, Black & Decker asserts that the New Power Box not only could not have been litigated in front of Judge St. Eve but was not litigated in front of Judge St. Eve. Specifically, Black & Decker contends that it was under the assumption that the New Power Box was essentially the same as the Old Power Box and therefore believed that the New Power Box was being litigated as part of its case in front of Judge Eve when in fact it was not. Thus, apparently, res judicata cannot preclude the current action.

  The representations by Bosch that purportedly led Black & Decker to believe that the New Power Box was the same include: (1) the designation number for the New Power Box was the same as the Old Power Box (i.e., PB-10CD); (2) Bosch purportedly never identified the New Power Box at any time during discovery; (3) Bosch never provided a sample of the New Power Box for Black & Decker to examine; (4) Bosch never produced any documentation to Black & Decker showing that the New Power Box differed in any meaningful way from the Old Power Box and the only changes had nothing to do with any relevant issue in the case; (5) Black & Decker's expert provided an opinion that the New Power Box functioned the same as the Old Power Box and (6) the New Power Box contained all of the same infringing features as to the Old Power Box.

Essentially, Black & Decker contends that it reasonably assumed that the New Power Box was the "same" as the Old Power Box and was in the litigation, Bosch did nothing to disabuse it of this notion, and therefore, because Judge St. Eve did not allow Black & Decker to proceed in front of her, it should be allowed to do so here.

The court detects several problems with Black & Decker's argument. As an initial matter, Judge St. Eve has already decided that the New Power Box should or could have been disclosed in the case in front of her, and because it was not, Black & Decker was not allowed to proceed as to the New Power Box at trial. Black & Decker's effort to proceed here appears to be an attempt to back-door the infringement claims that it was not allowed to present in front of Judge St. Eve. Moreover, as noted above, it strikes this court as incongruous that Black & Decker asserts on the one hand that it believed it was proceeding as if the New Power Box were in the case before Judge St. Eve but on the other hand argues that it did not have an opportunity to litigate the New Power Box in that case.

In any event, Black & Decker's erroneous assumption that the New Power Box was the "same" as the Old Power Box such that it did not have to separately identify it as one of the allegedly infringing products in front of Judge St. Eve was of its own making. Black & Decker clearly knew that Bosch was developing an updated Power Box. Indeed, it concedes the "upgraded" product was discussed by Bosch witnesses during their depositions in September 2005. Moreover, Black & Decker's own expert witness, Dr. Andrew Neuhalfen, "reviewed and examined" and "analyzed and discussed" the New Power Box in the context of the trial before Judge St. Eve.

While Black & Decker attempts to foist blame on Bosch by complaining that Bosch did

not produce schematics or design documents associated with the New Power Box in the case in front of Judge St. Eve, such purported discovery violations should have been addressed while that case was still pending through for example, a motion to compel, a motion for sanctions, or a request for an extension of discovery. Moreover, Black & Decker apparently did not believe discovery on the New Power Box was necessary because it was prepared to proceed with the New Power Box as part of its case in front of Judge St. Eve despite the purported lack of discovery. As Black & Decker states in its opposition to Bosch's motion in limine:

> Black & Decker contends that the new design should be part of this case [in front of Judge St. Eve]. Bosch's witnesses testified that no design changes were implemented, and Black & Decker's expert reviewed and analyzed the product, and included the analysis in his report.

Dkt. #340 at page 3 in case no. 04 C 7955, Exh. 2 to Bosch's Motion for Judgment on the Pleadings.

Black & Decker asserts that it could not have sought discovery on the New Power Box in front of Judge St. Eve because fact discovery in that case closed on September 30, 2005, and Bosch did not begin to sell the New Power Box until October 2005. But, as noted above, Black & Decker clearly had sufficient knowledge of the existence of the New Power Box prior to the close of discovery such that it could have made additional discovery requests (or sought a discovery extension) related to the New Power Box in a timely manner.

Black & Decker's reliance on *Jumpsport Inc. v. Hedstrom Corp.*, No. C 04-0199 PJH, 2004 WL 2203556 (N.D. Cal. Sept. 29, 2004), in support of its claim that it did not have an opportunity to litigate is unpersuasive. In *Jumpsport*, the district court declined to find improper claim splitting in a second patent suit. Another court in this district has already noted that the *Jumpsport* case is a "dubious citation" because it is marked NOT FOR CITATION. *Kim v. Sara*

*Lee Bakery Group, Inc.*, 412 F.Supp. 2d 929, 942 (N.D. Ill. 2006)("In any event, it hardly inspires confidence when such an unpublished authority, which was expressly designated as uncitable thereafter to the district court that rendered it, is offered as support in another judicial district and case."). Moreover, as noted by *Kim*, "the local rules in that instance required the 'early and binding' declaration of patent claims, as the district court specifically noted in explaining its decision." *Id*. In contrast, in the instant case, Bosch argues that Black & Decker knew about the New Power Box and failed to properly include it in the litigation before Judge St. Eve by amending its discovery responses or seeking to extend or reopen discovery. *Id.* ("Instead, Sara Lee argued that the claims were barred in the First Action because Dr. Kim knew about the full universe of Sara Lee formulas while discovery was open (*see, e.g.*, First Action, D.E. 86 at 1-2), never requested any further extension of discovery or seasonably moved to amend long-standing interrogatory responses (*id.*), and was, in Sara Lee's view, backtracking on representations that no further discovery was needed to adjudicate Dr. Kim's First Amended Complaint."). Thus, to the extent that Black & Decker argues that it was denied due process based on the lack of opportunity to fully and fairly litigate its claims in front of Judge St. Eve, that argument is rejected.

## IV. Conclusion

Even making all inferences in favor of Black & Decker, the court finds that based on the pleadings and documents in the public record, res judicata bars Black & Decker's assertion that the New Power Box infringes the Previously Asserted Patents. Accordingly, for the reasons stated above, Bosch's motion for judgment on the pleadings [35-1] is granted and its alternative motion for a stay pending appeal is denied as moot.

**Date:** April 25, 2007

_____
**Blanche M. Manning**
**United States District Judge**